(No. 12624.—Decision of board affirmed.)

THE WABASH RAILROAD COMPANY, Appellant, *vs.* THE BOARD OF REVIEW OF COOK COUNTY, Appellee.

*Opinion filed April 15, 1919—Rehearing denied June 6, 1919.*

TAXES—*State may tax money on hand April 1 received from operation of railroads under Federal control.* While the power of a State to tax does not extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States, the act of Congress providing for the operation and control of railroads by the Federal government was enacted as a temporary war measure and was not intended to deprive the States of the power of taxation of railroads which they possessed and exercised prior to the passage of the act, including the power to tax money on hand April 1.

CERTIFICATE of appeal to review the decision of Board of Review of Cook county.

JOHN GIBSON HALE, for appellant.

EDWARD J. BRUNDAGE, Attorney General, and CLARENCE N. BOORD, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The Wabash Railroad Company made and filed with the board of assessors of Cook county a schedule of personal property showing cash on hand on April 1, 1918, $10,000. The board of assessors raised the amount to $50,000, and made return of its assessment of one-third of that amount ($16,667) to the board of review. The railroad company filed its objection to the action of the board of assessors with the board of review, claiming the cash on hand was not its property but was the property of the United States government by reason of the government's control and operation of the railroad since January 1, 1918, and that all such moneys received from such operation and control, under the provisions of section 12 of the Federal Railroad Control act, were the property of the United States govern-

ment and not subject to taxation by the State. The board of review confirmed the assessment, and the railroad company, claiming to act for the Director General of Railroads of the United States, appealed to the Auditor of Public Accounts, and he has pursuant to the statute filed in this court a certified statement of the facts, including the affidavit of F. L. O'Leary that he is Federal treasurer of the Wabash Railroad Company; that between January 1, 1918, and June 1, 1918, all moneys received from the operation of the road in excess of disbursements made in operation of the road were in certain depositories and carried in the name of the Wabash Railroad Company; that all moneys on hand April 1, 1918, in banks in Cook county, or with station agents or other depositories, were received from the operation of the road subsequent to January 1, 1918, and belonged to and were the property of the United States government. The question presented is whether the money scheduled was subject to taxation by the State authorities.

It was settled by the decision of the Supreme Court of the United States in *McCulloch* v. *State of Maryland,* 4 Wheat. 429, that the power of a State to tax does not extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States, and that doctrine has since the decision of that case been adhered to by Federal and State courts. Did the taking over by the United States government of the control and operation of railroads under the act of Congress providing for the operation and control of railroads by the Federal government render the money received from their operation exempt from taxation by the State?

Section 1 of the said act of Congress provides that the President having in time of war taken over the possession, control and operation of certain railroads and systems of transportation, is authorized to agree with and guarantee to any such carrier making operating returns to the Inter-

State Commerce Commission that during such Federal control it shall receive as compensation not exceeding a sum equivalent, as nearly as may be, to its average annual railway operating income for the three years ended June 30, 1917. Said section further provides: "Every such agreement shall provide that any Federal taxes * * * commonly called war taxes, assessed for the period of Federal control beginning January 1, 1918, or any part of such period, shall be paid by the carrier out of its own funds or shall be charged against or deducted from the just compensation; that other taxes assessed under Federal or any other governmental authority for the period of Federal control, or any part thereof, either on the property used under such Federal control or on the right to operate as a carrier, or on the revenues, or any part thereof, derived from operation, * * * shall be paid out of revenues derived from railway operations while under Federal control; that all taxes assessed under Federal or any other governmental authority for the period prior to January 1, 1918, whenever levied or payable, shall be paid by the carrier out of its own funds or shall be charged against or deducted from the just compensation." Section 10 provides "that carriers, while under Federal control, shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal government: * * * Provided, however, that when the President shall find and certify to the Inter-State Commerce Commission that in order to defray the expenses of Federal control and

288 — 11

operation fairly chargeable to railway operating expenses, and also to pay railway tax accruals other than war taxes, * * * it is necessary to increase the railway operating revenues," the Inter-State Commerce Commission, in determining the reasonableness of a rate, shall take into consideration the finding by the President, together with such recommendations as he may make. Section 12 declares moneys derived from the operation of the carriers during Federal control to be the property of the United States, and "disbursements therefrom shall, without further appropriation, be made in the same manner as before Federal control and * * * are chargeable to operating expenses or to railway tax accruals. * * * If such revenues are insufficient to meet such disbursements the deficit shall be paid out of such revolving fund in such manner as the President may direct." Section 15 provides "that nothing in this act shall be construed to amend, repeal, impair or affect the existing laws or powers of the States in relation to taxation or to lawful police regulations of the several States, except wherein such laws, powers or regulations may affect the transportation of troops, war materials, government supplies or the issue of stocks and bonds."

By the terms of the act Federal control was not to continue to exceed twenty-one months after the war. We understand the taking over of the operation and control of the railroads by the Federal government was a temporary war measure, and that they did not thereby become instruments or agencies of the government for the purpose of carrying into effect powers of the government conferred by the people,—at least to the extent that their property was not subject to taxation by the States. It would seem from the provision of section 1 "that other taxes assessed under Federal or any other governmental authority" during Federal control, "or on the revenues, or any part thereof, derived from operation, * * * shall be paid out of revenues derived from railway operations while under Federal con-

trol," and from the provisions of sections 10, 12 and 15 relating to tax accruals, that it was not the intention of Congress to deprive the States of the power of taxation which they possessed and exercised prior to the passage of the act temporarily taking over, not the ownership but the operation and control of railroads.

The decision of the State taxing authorities in assessing the property is approved and the assessment confirmed.

*Decision affirmed.*