[S. F. No. 9763. In Bank.—June 8, 1922.]

JOHN BARTON PAYNE, as Director-General of Railroads, etc., Appellant, v. FRIEND W. RICHARDSON, as State Treasurer, etc., Respondent.

[1] TAXATION—GROSS RECEIPTS OF RAILROAD.—In estimating the gross receipts of a railroad for the purpose of taxation, the carrier's own transportation should not be considered.

[2] ID.—GOVERNMENT CONTROL OF RAILROADS—MANNER OF ASCERTAINMENT OF TAXES—CONSTRUCTION OF FEDERAL CONTROL ACT.—Under section 15 of the Federal Control Act, providing that nothing therein shall be construed to affect the existing laws or powers of the states in relation to taxation, the taxes to be paid by the Director-General of Railroads to various states or municipal bodies are to be ascertained in the same manner that they would have been levied and assessed had the railroad corporation remained in control.

[3] ID.—REVENUE DERIVED FROM GOVERNMENT TRANSPORTATION—INCLUSION IN GROSS RECEIPTS.—Where a state tax on railroad property was based on a percentage of gross receipts, as a basis of property valuation, the amount of transportation furnished the government for which a railroad had not been paid should be included in the gross receipts for the purpose of taxation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry C. Booth for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

---

1.   What are gross earnings of railroads, note, 16 **Ann. Cas.** 429.

WILBUR, J.—This action was brought to secure an adjudication that the plaintiff has overpaid the state of California the sum of $186,711.22 for taxes upon properties of the Southern Pacific Railroad Company in the state of California, this amount having been paid under protest, the plaintiff suing under and by virtue of the provisions of section 3669a of the Political Code, to establish the illegality of the tax and to secure judgment upon which basis an appropriation for reimbursement may be sought from the legislature. The court sustained a general demurrer to the complaint and rendered judgment in favor of the defendant. Several questions are raised by the parties with relation to the authority of the plaintiff to bring the suit in question and as to the authority of the defendant to represent the state of California in defending against the claims of the plaintiff. We will, however, consider the main question upon its merits. The plaintiff claims that the state board of equalization improperly included in the gross receipts upon which the tax of five and one-fourth per cent was computed the sum of $3,556,404.28, which amount constitutes the amount charged against the United States of America for transportation of passengers and freight for war purposes. The appellant thus states his position:

"The ground of our claim that the sum sued for was erroneously and excessively levied, and collected from the Director-General is that it represents 5¼ per cent of the value of—not the amount collected for—transportation furnished by the United States to itself on, and while in exclusive possession and operation of, Southern Pacific Company operative properties in California during the calendar year 1918, and that as the constitutional provision and statutes authorizing the gross receipts method of taxation use the words 'gross receipts from operation,' such amounts so included over the protest of the plaintiff were not gross receipts or any receipts at all."

[1] The rule is well settled that the carrier's own transportation should not be considered in estimating the gross receipts of the railroad. In support of this rule appellant cites *McHenry* v. *Alford*, 168 U. S. 651 [42 L. Ed. 614, 18 Sup. Ct. Rep. 242, see, also, Rose's U. S. Notes]; *Union Pac. R. R. Co.* v. *United States*, 99 U. S. 402 [25 L. Ed. 274, see, also, Rose's U. S. Notes]; *State* v. *Minnesota*

*& International Ry. Co.,* 106 Minn. 176 [16 Ann. Cas. 426, 118 N. W. 679]; *State* v. *Northwestern Telephone Exch. Co.,* 107 Minn. 390 [120 N. W. 534]. It may be conceded that the transportation of the railroad company's freight would not augment the gross receipts of the company. The question presented here is quite different. Under section 15 of the Federal Control Act, 40 U. S. Stats. at Large, pages 451, 458 [Fed. Stats. Ann. 1918, Supp., p. 765; U. S. Comp. Stats. 1919, Supp., sec. 3115¾-o], it is provided: "Nothing in this act shall be 'construed to amend, repeal, impair, or affect the existing laws or powers of the states in relation to taxation or the lawful police regulations of the several states, except wherein such laws, powers, or regulations may affect the transportation of troops, war materials, government supplies, or the issue of stocks and bonds."

[2] We think it clear from this provision of the federal statute that it was intended that the taxes to be paid by the Director-General to various states or municipal bodies were to be ascertained in the same manner that it would have been levied and assessed had the railroad corporation remained in control. This view has also been entertained by the courts. (*Wabash R. Co.* v. *Board of Review,* 288 Ill. 159 [123 N. E. 259]; *Pennsylvania Coal Co.* v. *Saddle River Township,* 96 N. J. L. 40 [114 Atl. 157]; *St. Louis-San Francisco Ry. Co.* v. *Middlekamp,* 256 U. S. 226 [65 L. Ed. 905, 41 Sup. Ct. Rep. 489, see, also, Rose's U. S. Notes].) For that reason it was proper to include in the taxes the revenue derived from government transportation.

[3] Appellant's contention, however, is that the amount of $3,556,404.28 merely represents an estimate at regular tariff schedules of the amount which would be chargeable at those rates to the government, and that it is, therefore, not a receipt at all. It is so alleged in the complaint and admitted by demurrer. The point is thus stated in the appellant's brief: "The amounts representing what would have been charged the United States Government for transportation of men and property of United States if the Southern Pacific Company had remained in control should have been excluded from the gross receipts and the tax based thereon was erroneous and excessive."

The respondent claims that this question cannot be raised upon the record for the reason that the statement furnished

by the plaintiff to the state board of equalization upon which the tax was levied and collected showed that said amount had been paid and was included in the gross receipts. However, we will assume, as alleged by the plaintiff and admitted by the demurrer, that the amount has not been paid by the United States to the plaintiff, its agent, or to the railroad company, and that the statement made to the state board of equalization is also susceptible of that construction. Nevertheless, if the taxes were to be levied and assessed exactly as if in private ownership, as seems to be contemplated by the Federal Control Act (sec. 15, *supra*), there was no error in the assessment. It is true that the United States through the plaintiff was operating the road as a private owner would, and was not, therefore, required to charge to itself any freight pertaining to the operation of the railroad, or pay or charge to itself freight or passenger fares for war transportation, but for purposes of state taxation it is clear that the United States intended, as manifested in its Federal Control Act (sec. 15, *supra*), that such taxes should be ascertained on the same basis as if the railroad had remained in private ownership. Otherwise, the power of the state would be "affected" by the change of management. The system of taxation by requiring a percentage of the gross receipts to be paid to the state is merely a basis for the taxation of the property of railroads (*Pullman Co.* v. *Richardson,* 185 Cal. 484 [197 Pac. 346]), and the value of the railroad is obviously the same, whether operated by the company itself or by the Director-General. To depreciate the value of the property by a failure to include in the gross receipts the amount of transportation furnished the government, which would be a charge in private ownership, would be to fix a different property tax in one case from that in the other, and thus affect the state tax in violation of section 15 of the Federal Control Act, *supra.* That being true, it follows that the tax in question was properly collected.

Judgment affirmed.

Lennon, J., Shurtleff, J., Sloane, J., Lawlor, J., and Waste, J., concurred.

SHAW, C. J., Concurring.—I concur.

The agreement under which the United States took possession of the railroad system of the Southern Pacific Com-

pany provided that the Director-General should pay all taxes lawfully assessed by the state on the property taken, or on the right to operate as a carrier, or save said company harmless therefrom. Under the scheme of taxation provided in the constitution of California (art. XIII, sec. 14), the state imposes upon the railroad company annually a percentage tax upon the "gross receipts from operation" of its lines situated within this state. If the company had continued to operate the lines and the United States had transported thereon the same freight and passengers that were transported for the road for government purposes under the management of the Director-General during the year in controversy, the earnings from such transportation would have included the amount produced at the regular rates for such carriage. It is evident that the taxes should be computed on the same basis as if such operation had continued, and that it was not contemplated that the earnings from the transportation on government account should go free from the burden of taxation, as the plaintiff, in effect, demands.