[L. A. No. 14008. In Bank.—March 30, 1934.]

SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), et al., Petitioners, v. STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA, Respondent.

Roy V. Reppy and E. W. Cunningham for Petitioners.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

Thomas J. Straub and W. H. Spaulding, as *Amici Curiae* in Behalf of Petitioners.

CURTIS, J.—Petitioners, the Southern California Edison Company, Ltd., a corporation, and the San Joaquin & Eastern Railroad Company, a corporation, filed herein their petition asking for an alternative writ of mandate requiring respondent, the State Board of Equalization, to grant certain credit on future payment of taxes to become due from petitioners, and to issue the certificate to the State Board of Control provided for under subdivision 3 of section 3669 of the Political Code, stating the amount of said credit. Petitioners further pray, upon a hearing after the return on said alternative writ, that the writ be made peremptory. The alternative writ was issued and regularly served upon the respondent. The return of respondent to the writ is a demurrer thereto on the ground that the petition does not state facts sufficient to constitute a cause of action or any ground for relief.

Petitioner Southern California Edison Company, Ltd., hereinafter referred to as "Edison Company", is engaged in the business of generating and distributing electric energy as a public utility. A part of its generating system, known as the Big Creek project, is located in the mountains of Fresno County. Petitioner San Joaquin and Eastern Railroad Company, hereinafter referred to as "Railroad Company", was originally organized at the instigation of Pacific Light and Power Corporation, Edison Company's predecessor in the ownership of the Big Creek project, for the purpose of building and operating a short-line railroad between El Prado and Big Creek, Fresno County, California, to be used in constructing, maintaining and operating the Big Creek hydroelectric plants. At the time Edison Company acquired the Big' Creek project in 1917, it also acquired the ownership of all the stock of the Railroad Company, and since that time has operated the railroad through its subsidiary, the Railroad Company, as a necessary adjunct to the maintenance and operation of the Big Creek project. The

railroad system has also at all times been operated as a common carrier, and during the past few years the Railroad Company has also operated in connection with its railroad system the highway transportation system between Fresno and Huntington Lake, which is a part of the Big Creek project. This highway transportation system, like the railroad system, has been operated as a common carrier, and also for the transportation of freight and express used by the Edison Company in the maintenance and operation of the Big Creek project.

Respondent board, in computing state taxes against the operative properties of petitioners for the fiscal year 1920–1921, included as part of the gross receipts of the Railroad Company, upon which its tax is based, charges made by the Railroad Company for transportation of materials and supplies for the Edison Company at the regular filed rates of the Railroad Company. Subsequent thereto, petitioners requested of respondent board an allowance for credit on the next taxes coming due, on the theory that the charges made by the Railroad Company against the Edison Company, which charges are hereinafter referred to as "inter-company revenue", should not have been included in the gross receipts of the Railroad Company on which the tax was computed. This application for credit was duly allowed by the board, and thereafter, in following years, and up to and including the tax computed for the fiscal year 1931–1932, the board followed this method of computing the petitioners' taxes, on the theory that under the law the inter-company revenue should be excluded from the gross receipts.

In computing petitioners' taxes for the fiscal year 1932–1933, respondent board departed from its previous interpretation of the law, and included in the gross receipts of the Railroad Company, inter-company revenue derived by the railroad from carrying materials and supplies as freight and express for the Edison Company in connection with the operation and maintenance of the Big Creek project. This method of computing the taxes has resulted in an increase over what it would have been if computed by the old method of $448.86 on the railroad system, and of $474.22 on the highway transportation system. At the same time respondent board assessed taxes against all the operative properties of Edison Company used by it in the generation and transmission of

electric energy in the amount of $2,997,136.26 for the fiscal year 1932–1933.

The first half of the tax thus assessed on the Railroad Company's property has been paid by petitioners under protest, and after making this payment petitioners filed with the board a claim for credit on the next taxes to become due from them after the allowance of such claim on account of the alleged erroneous method followed by the board in computing the taxes against the railway system and the highway transportation system of the Railroad Company. These claims are for $224.42 on account of the overpayment of taxes upon the railroad system and for $237.11 on account of the overpayment of taxes on the highway transportation system. These claims the respondent board duly denied on the ground that the inter-company revenue should be included as a part of the gross receipts upon which such taxes are computed.

Subdivision 3 of section 3669 of the Political Code provides that whenever any taxes, paid to the state treasurer, shall have been paid more than once, or shall have been erroneously or illegally collected, or shall have been computed contrary to law, the State Board of Equalization shall certify to the State Board of Control the amount of said taxes collected in excess of what was legally due, from whom they were collected or by whom paid, and if approved by said board of control, the same shall be credited to the person or company to whom it rightfully belongs, at the time of the next payment of taxes.

It is the contention of petitioners that the two amounts of $224.42 and $237.11, aggregating the sum of $461.53, were erroneously collected from them as taxes for the fiscal year 1932–1933. This claim is based upon the fact that the amount paid by the Edison Company to the Railroad Company during said year for the transportation of materials and supplies as freight and express in connection with the operation and maintenance of its light and power enterprise —referred to above as inter-company business—should not be included as a part of the gross receipts of the Railroad Company. There seems to be no question that the Railroad Company is but a subsidiary company of the Edison Company, the latter company being the legal owner of all the stock of the former. In such a case its gross receipts are

computed as a part of the gross proceeds of the Edison Company. (*San Francisco-Oakland T. Rys.* v. *Johnson,* 210 Cal. 138, 154, 155 [291 Pac. 197].) Therefore, petitioners contend that when the Edison Company paid the Railroad Company freight and express charges for carrying its own commodities, it was in reality paying these charges to itself and that such receipts by the Railroad Company should not be considered in computing its gross receipts. This contention, we think, must be sustained. By section 14 of article XIII of the Constitution the taxes levied against the property of certain corporations therein named, including power companies and railroads, are computed upon their gross receipts from the operation of said companies for the calendar year next prior to said levy. Under the decisions of this court as noted above, when one company is a subsidiary of the other, the taxes are computed upon the total gross receipts of the combined companies. But such receipts must be actual receipts, and not revenue only fictitiously or theoretically received. In the present proceeding it appears that the subsidiary company actually received no revenue or other remuneration whatever from the parent company for carrying materials and supplies as freight and express over its railroad lines. There was, therefore, no gross receipts, nor any receipts whatever from this branch of its business. For reasons of its own, the Edison Company, or parent company, kept the accounts of its subsidiary company separated from its own and charged itself upon the books of the subsidiary company for all freight and express shipped by it over the lines of said company. These charges were offset by other entries purporting to show their payment. But no money or cash whatever passed from the parent company to the subsidiary company in any of these transactions. They, therefore, represented no receipts upon which a tax might be computed.

In *State* v. *Minnesota & International Ry. Co.,* 106 Minn. 176 [118 N. W. 679, 16 Ann. Cas. 426], the Supreme Court of Minnesota, in passing upon the question as to what are gross receipts under the taxation system of that state, ruled as follows: "Items 16 and 17 amounting to about $3,500 are claimed by the state as gross earnings upon the theory that the company occupied the position of shipper when it transported its own supplies and materials over its own

lines in the state of Minnesota. The company could not be required to pay itself for carrying its own materials, and it should not be charged with the amount which it would have received had the materials been shipped by other companies. The law does not refer to benefits or privileges of this character.'' Our own court has also given expression to a similar statement of the law (*Payne* v. *Richardson,* 189 Cal. 103, 104 [207 Pac. 547]), where the court held that, ''The rule is well settled that the carrier's own transportation should not be considered in estimating the gross receipts of the railroad.'' (Citing case.) While these cases did not involve revenue of a subsidiary company for services rendered by the parent company, we can perceive no reason why the rule should be any different when applied to inter-company revenue.

It was the duty, therefore, of the respondent, in determining the gross receipts of the Edison Company, to include therein only the revenue actually received by the Railroad Company from the operation of its railway and highway transportation systems, and to exclude from such gross receipts all revenue purporting to have been paid (but no part of which was actually paid) by the Edison Company to its subsidiary corporation, the Railroad Company, for services rendered in carrying freight and express over the lines of its subsidiary company. The method, therefore, pursued by the respondent during the years prior to the fiscal year 1931–1932 of allowing petitioner credit for this ''inter-company revenue'' on its taxes coming due the following year was not in variance with any requirement of said section of the Constitution under which said taxes were levied and collected, but was in strict compliance with the provisions of subdivision 3 of section 3669 of the Political Code. There is nothing contrary to this interpretation of the law to be found in the case of *Pacific Gas & Elec. Co.* v. *Roberts,* 176 Cal. 183 [167 Pac. 845]. In that case the plaintiff sued to recover certain taxes, which it claimed were illegally assessed against it for the fiscal year beginning July 1, 1911. A portion of these taxes were computed upon the gross earnings of the Suburban Light & Power Company for the year 1910. During that year the Suburban Company was operated as an independent company, but between January 1, 1911, and March 1, 1911, the Pacific Gas and

Electric Company acquired the properties of the Suburban Company and operated the same as a subsidiary company for the year 1911. During the year 1910, while the Suburban Company was being operated as an independent company, the Pacific Gas and Electric Company sold to it large quantities of gas and electricity at a cost of $52,717.99. The total gross receipts of the Suburban Company for that year were $188,401.60, and plaintiff contended in said action that this sum of $52,717.99 should be deducted from the sum of $188,401.60, and that the difference between these two amounts would represent the gross receipts of the Suburban Company for the year 1910. The court held that no such deduction should be made. It will be noted that that case did not involve in any manner whatever so-called ''intercompany revenue'', as the gross receipts therein involved, and all receipts of both companies which the court then had under consideration, were receipts from the properties of said companies during the year 1910, when each company was owned and operated independently of the other, and before the Pacific Gas and Electric Company had purchased the properties of the Suburban Company. It is true that in our former decision in this case we held that it was decisive of the questions involved in the instant case. But our holding was predicated upon a misconception of the facts in that case. At the former hearing it was contended by respondent that the Suburban Company, during the year 1910, and at the time when it purchased from the Pacific Gas and Electric Company gas and electricity at a cost of $52,717.99, was being operated by the plaintiff, the Pacific Gas and Electric Company, as a subsidiary company, and, therefore, whatever receipts came to it from the Suburban Company were simply theoretical receipts from the subsidiary to the parent corporation, or in other words, ''intercompany revenue''. A closer study of the decision in the Roberts case, with the aid of the record and briefs therein, makes clear the fact that the Suburban Company was operated during the year 1910, as an independent company, and that the question of ''inter-company revenue'' was not involved therein. The Roberts case is, therefore, distinguishable from the instant case, and as correctly understood it is not decisive of any question involved herein.

In view of what we have said, it is apparent that there is no merit in the contention of respondent that certain provisions of section 3665c of the Political Code are at variance with section 14 of article XIII of the Constitution, and are for that reason ineffective. This section provides for the filing with the State Board of Equalization of annual reports by those companies whose property is subject to state taxation. These reports are required to show the gross receipts of the company and any other information the State Board of Equalization may deem necessary in order to enable it to levy the taxes provided for in section 14, article XIII, of the Constitution. The provisions of this section to which the respondent makes objection are found in subdivision 11 of said section 3665c, and they provide that each such company shall include in its annual report to the Board of Equalization the property and business of all subsidiary companies and that no separate report need be rendered by a subsidiary company whose property, franchise and operations are fully covered by the report of the operating company, unless the Board of Equalization shall deem a separate report necessary. In this section of the code a subsidiary company is defined and, as so defined, there can be no question but that the Railroad Company herein involved is a subsidiary company of the Edison Company. While this section does not expressly provide that the Board of Equalization shall eliminate "inter-company revenue" from the gross receipts of the parent company, it at least requires information in the annual reports which will enable the board to do just that thing. It may be inferred from the language of the section that the legislature intended that the Board of Equalization should follow such a procedure. But this section does not attempt to confer any such power upon the Board of Equalization. The Constitution fixes the basis of computing the taxes to be paid by such corporations and that basis is, as we have seen, the gross receipts of each such corporation. But, as held above, the gross receipts of a company are limited to its actual revenue and do not include fictitious or theoretical receipts which are mere matters of bookkeeping only and which have in fact no real existence. Had section 3665c of the Political Code expressly empowered the Board of Equalization to eliminate such fictitious items in computing the amount of gross receipts of such companies, it could not for

that reason be held to be unconstitutional. In that case, it would only have expressly directed the Board of Equalization to do that which the Constitution had impliedly authorized to be done. It follows that section 3665c as now in force cannot be held to be in variance with the Constitution.

Let the writ of mandate issue as prayed for.

Preston, J., Langdon, J., Waste, C. J., and Shenk, J., concurred.