## BERRYESSA CATTLE CO. v. SUNSET PACIFIC OIL CO.

## SUNSET OIL CO. v. STATE OF CALIFORNIA et al.

### No. 8182.

Circuit Court of Appeals, Ninth Circuit.

Jan. 18, 1937.

Mitchell, Silberberg & Knupp and Ross R. Hastings, all of Los Angeles, Cal., for appellant.

U. S. Webb, Atty. Gen., and John O. Palstine, Deputy Atty. Gen., for appellees.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

The property of the Sunset Pacific Oil Company was in the hands of a receiver appointed August 28, 1931, by the District Court of the United States for the Southern District of California in a creditors'

bill, and also in a suit to foreclose a trust deed.

The Sunset Pacific Oil Company was engaged in the business of producing oil and through a subsidiary, the Seaboard Petroleum Company, a corporation, operated an oil refinery. On December 24, 1931, the Controller of the State of California, acting on behalf of the estate, filed a claim for taxes which had accrued prior to the receivership, amounting with penalties to $6,519.27 upon gasoline produced by the Sunset Pacific Oil Company. This tax was for the quarter ending March 31, 1931. The total tax due at that time was $51,-021.72. The corporation paid $45,095.11 and declined to pay the balance of the tax, $5,926.61. By reason of the nonpayment of this portion of the tax a 10 per cent. penalty attached on May 15, 1931. The refusal to pay this portion of the tax concededly due is based upon the contention that the Sunset Pacific Oil Company had theretofore paid $5,926.61 upon gasoline produced between September 1, 1929, and January 7, 1930, being the tax upon 197,322 gallons of gasoline in excess of the amount of gasoline actually produced.

The error of 197,322 gallons arose from the fact that the account between the Sunset Pacific Oil Company and its subsidiaries involving the sale of crude petroleum to the subsidiary provided for the refining of the oil by the subsidiary and the payment therefor to the Sunset Pacific Oil Company, that in the accounting between the two affiliated corporations the transactions were carried on the books on the basis of the computation of the gasoline content of the oil before it was refined, spoken of in the findings of the special master as "the theoretical gasoline content." It was discovered in January, 1930, that the gasoline on hand was short of the amount demanded by the books of the two companies in the amount of 197,322 gallons. It is assumed by the parties in the presentation of the case on appeal that this difference between the gallons of gasoline on hand and the gasoline as shown by the books based upon the theoretical content of the crude oil was not produced, and therefore the appellant contends that the tax imposed upon that amount of gasoline was erroneous in that no such gasoline was ever produced. The tax on this amount of gasoline was included in three accounting periods as follows: As to the deficiency from September 1, 1929, to September 30, 1929, in the third quarter of 1929; as to the deficiency from

October 1, 1929, to December 31, 1929, in the fourth quarter of 1929; as to the deficiency from January 1, 1930, to January 7, 1930, in the first quarter of 1930. The taxes paid during these periods were very large. For instance the tax for the quarter ending December 31, 1929, was $395,811.71, and for the previous quarter, $358,457.77; for the quarter ending March 31, 1930, $325,116.86.

The appellees contend that there is no right to set-off in this case because the exercise of such a right is inconsistent with the right of a sovereign state not to be sued without its consent. The Motor Vehicle Act under which the tax was levied contains the following provision: "All matters of procedure relating to refunds of taxes or the cancellation of any assessment levied under the provisions of this act shall be governed by the provision of section three thousand six hundred sixty-nine of the Political Code." Cal.St.1925, p. 661. Section 3669 of the California Political Code is shown in footnote.[1]

The Supreme Court of California in People v. Miles, 56 Cal. 401, stated the general rule with reference to the allowance of set-off against the state, as follows: "It would seem to be hardly necessary to cite authorities to the proposition, that a State cannot be sued in her own State, directly or indirectly, as by setting up a counterclaim or set-off; nor can any judgment be recovered against the State, except when the same is permitted by express statute."

The first question for consideration is whether or not the state has authorized a suit to be brought against it to recover a tax illegally and erroneously collected. The burden lies upon the parties suing the state to show that such a suit has been authorized by the state. The appellant points to section 3669, subd. 3, of the Political Code, as authorizing a suit to recover motor vehicle fuel taxes erroneously or illegally collected because of the provision of the Motor Vehicle Act making such section applicable to refunds or cancellation of assessments under the Motor Vehicle Act. This section does not purport to authorize a suit against the state to recover taxes erroneously or illegally collected, but provides an administrative method for securing a set-off. Unless the recognition of the substantive right of the taxpayer to have the benefit of such payment as a set-off against subsequent taxes implies a right to bring a suit for such recovery in the event that the claim is disallowed by the state officers no provision of law has been cited by the appellant which authorizes the court to entertain the claim for set-off. The rule is that authority to sue must be expressly given. It is therefore not to be inferred from a mere recognition of substantive right to be established by administrative procedure that authority has been given to sue. The Supreme Court of California had under consideration the right to sue the state to recover license taxes which had been collected under an unconstitutional law. The Supreme Court held that the right of recovery in such a case arose from an implied contract to be recovered in an action indebitatus assumpsit and that such an action was expressly authorized by an act of the California Legislature of February 28, 1893 (Cal.St.1893, p. 57). Welsbach Co. v. State of California, 206 Cal. 556, 275 P. 436. This decision, and its companion case, Whyte v. Jordan, 206 Cal. 552, 275 P. 438, was rendered February 26, 1929. The Legislature of the State of California was then in session and immediately passed an act, approved May 27, 1929, repealing the act of February 28, 1893 (Session Laws of Cal.1929, c. 516, p. 890), which had been held to authorize a suit against the state. By the same act it provided for the method of ascertaining and paying claims against the state, adding sections 686 to 692, inclusive, to the Political Code. None of these sections authorizes a claim against the state upon an implied

---

[1] "§ 3669. * * * 3. Taxes in excess of what was legally due. Whenever any taxes, penalties, or costs collected and paid to the state treasurer as hereinbefore provided, shall have been paid more than once, or shall have been erroneously or illegally collected, or when any taxes shall have been collected and paid pursuant to said provisions of law upon a computation erroneously made by reason of clerical mistake of the officers or employees of the state board of equalization, or shall have been computed in a manner contrary to law, the state board of equalization shall certify to the state board of control the amount of such taxes, penalties, or costs, collected in excess of what was legally due, from whom they were collected or by whom paid, and if approved by said board of control, the same shall be credited to the company or person to whom it rightfully belongs, at the time of the next payment of taxes. No claim for such credit shall be so audited, approved, allowed, or paid unless presented within one year after the payment sought to be refunded."

contract. For instance, section 688 authorizes a claim "on express contract or for negligence," whereas the Act of February 28, 1893 had authorized a suit on "claims on contract or for negligence." It is clear from this legislation that the Legislature intended to withdraw its consent that the state might be sued upon implied contract including a contract for the recovery of taxes erroneously or illegally collected. Section 688 Cal.P.C. was amended in 1931 (Cal.St.1931, p. 849), and again in 1933 (Cal.St.1933, p. 2299), but remained unchanged so far as the question under consideration is concerned.

It follows from what has been said that the state has not authorized a suit to recover for taxes erroneously or illegally collected by its officers otherwise than by the action of its administrative officers. The Supreme Court of California has recently held that the state authorities could be compelled by mandamus to give the right of set-off. Southern Cal. Edison Co. v. State Board of Equalization, 220 Cal. 420, 31 P.(2d) 384. But this holding is not equivalent to a decision that the statute authorizes (section 3669 P.C.) a suit against the State of California. In U'ren v. State Board of Control, 31 Cal.App. 6, 159 P. 615, 618, the District Court of Appeal of the First Appellate District pointed out the distinction between an action in mandamus to compel the performance of ministerial duties with reference to a claim and an action brought against the state. There the contention has been made by the appellant that the action to compel the payment of money to the plaintiff by the state by way of mandamus was in effect an action against the state which could not be maintained in the absence of express consent of the state to be sued. The court said: "This is not in form or substance an action against the state to determine a contested claim against its treasury. The state has already by the act of its Legislature set apart a specific fund for the payment of such obligations as the conservation commission had power to create. * * * The state is thus in a position of having assented to this claim; and this is an action or proceeding merely to compel the official auditor in the form of the board of control to perform a duty expressly enjoined upon it by law."

Moreover, it should be observed that in Southern Cal. Edison Co. v. State Board of Equalization, supra, there was no dispute as to facts which were disclosed by the report upon which the tax was computed, whereas, in the case at bar the question of whether or not the gasoline was actually produced does not appear from the records of the state controller's office. On the contrary, these records show a report from the producing company that it had produced the amount of gasoline for which it was taxed. Compare, Huidekoper v. Hadley (C.C.A.) 177 F. 1, 40 L.R.A.(N.S.) 505; Town of Easton v. Canal Board, 216 N.Y. 486, 111 N.E. 49. Under such circumstances it is doubtful if the rights of the appellant can be forced either by suit or by mandamus. See Laidlaw Bros. v. Marrs, State Superintendent, 114 Tex. 561, 273 S.W. 789. See, also, First Nat. Bank of St. Cloud v. Hirning, 48 S.D. 417, 204 N.W. 901. Appellant strongly relies on the case of Bull v. U. S., 295 U.S. 247, 55 S. Ct. 695, 697, 79 L.Ed. 1421. This decision has to do with the right of recoupment against the United States and is necessarily based upon the legislation of the United States while in the case at bar we are dealing with the question as to whether or not the legislation of California has authorized suits against the state. Furthermore, the Supreme Court is not dealing with the question of the right to maintain an action against the United States to recover taxes but its opinion is addressed to the merits and to the bar of the statute of limitations. In that regard, the court stated: "The respondent presents two arguments in opposition, one addressed to the merits and the other to the bar of the statute of limitations."

The appellant purchased all the property of the Sunset Pacific Oil Company at foreclosure, held December 14, 1934. The sale was confirmed December 29, 1934. The mortgage foreclosed antedated the lien for the gasoline tax in dispute. The purchaser claims that the mortgage lien is superior to the tax lien, and hence that the sale of the property extinguished the tax lien. The gasoline tax law of the State of California provided that the gasoline tax lien upon the property subject thereto "shall remain until the tax is paid or the property sold for the payment thereof." This language was borrowed from section 3716 of the Political Code of California. In 1897, before the enactment of the gasoline tax law (Cal. St.1925, p. 659, § 4) here involved, the Supreme Court of California had held that this language used in section 3716 of the California Political Code, supra, gave a prior and paramount lien for taxes. Cali-

fornia Loan & Trust Co. v. Weis, 118 Cal. 489, 50 P. 697. By the use of this language, so construed by the Supreme Court of California, in its subsequent legislation with relation to the lien of gasoline taxes, it must be held that the Legislature intended the language to have the effect attributed to it by the Supreme Court in its prior opinion; hence it must be held that the tax lien for the gasoline taxes here in question was unaffected by the foreclosure and sale above mentioned.

It follows that the trial court did not err in refusing to consider appellant's claim to a set-off against the claim of the state for taxes.

Order affirmed.