217 So.2d 116 (1968)
Hazel Marie ARNOLD, a Widow, and Hazel Marie Arnold, As Administratrix of the Estate of Marylon Arnold, Deceased, Appellant,
v.
Keither L. SHUMPERT, William Luther Coffer, and Orange County, a Political Subdivision of the State of Florida, Jointly and Severally, Appellees.
Benjamin F. INGRAM, Appellant,
v.
Keither L. SHUMPERT, William Luther Coffer, and Orange County, a Political Subdivision of the State of Florida, Jointly and Severally, Appellees.
Nos. 36419, 36420.
Supreme Court of Florida.
December 16, 1968.
*117 J. Russell Hornsby, Orlando, for appellants.
John H. Ward, of Gurney, Gurney & Handley and Sion W. Carter, Jr., of Giles, Hedrick & Robinson, Orlando, for appellee.
THORNAL, Justice.
By consolidated appeals we review two circuit court judgments which determined the invalidity of Chapter 29348, Special Acts 1953.
Appellants-plaintiffs alleged in their separate complaints that Marylon Arnold had been killed and Benjamin F. Ingram had been injured in an automobile collision at a county road intersection when a traffic signal device malfunctioned. The light flashed green in all four directions simultaneously. They originally based their claims on the County's negligent failure properly to maintain and operate this traffic signal. They alleged that under Fla. Stat. § 455.06 (1963), F.S.A., the County had waived its sovereign immunity by providing insurance coverage to reimburse appellants for their damages.
This amended complaint was dismissed with prejudice by the lower court because "the operation of a traffic signal by a subdivision of the State of Florida is not contemplated within Florida Statutes 455.06".
Appellants then alleged in a further amended complaint that Orange County's public liability insurance purchased pursuant to Chapter 29348, Special Acts 1953, Laws of Florida, allowed recovery for the negligent maintenance and operation of the traffic signal. Subsequently, by pretrial order the lower court granted Orange County's motion for severance of issues and ordered a separate trial involving only Orange County and appellants. The issue in this separate trial was whether Orange County could validly purchase insurance under Chapter 29348, Special Acts 1953, Laws of Florida, and thereby waive its sovereign immunity.
Both cases were tried without juries. On April 5, 1967, in the final judgments, the lower court determined that (1) the Special Act was unconstitutional; (2) Fla. Stat. § 455.06 (1963), F.S.A., was not broad enough to authorize coverage of the traffic light; and (3) Orange County did not waive its defense of governmental immunity since *118 the Board of County Commissioners did not contract for the insurance under the Special Act, and the General Act was not broad enough to waive immunity from liability for the particular negligence involved here.
We must decide whether the trial judge ruled correctly on the scope of the General Act, the constitutionality of the Special Act, and the non-waiver of sovereign immunity.
We will discuss each point as raised in the brief of appellants.

(I) "Whether the trial court erred in holding that Fla. Stat. § 455.06 (1963), was not broad enough to cover liability insurance for the negligent ownership, maintenance, or operation of a semaphore traffic signal control device."
The Travelers Indemnity Company's insurance policy involved here could easily be construed to cover the negligent operation of a traffic light. The policy states it covers the following hazards: "highways or roads  state, county or township  including bridges and culverts except toll bridges and drawbridges *378." Casualty Manual, Code No. 378, filed by Travelers Indemnity Company with the State of Florida reads: "This classification also provides coverage for the existence of such incidental exposure as parking meters, traffic lights or signs * * *." Thus, both the County and the insurance company apparently intended the policy to cover the present accident.
Once it is recognized that the insurance policy included the operation of a traffic signal, the next question is whether Fla. Stat. § 455.06 (1963), F.S.A., authorized the County to contract for such insurance and, by doing so, to waive its sovereign immunity. When dealing with a statute that purports to authorize such a waiver, this Court has held that such statutory language "must be clear and unequivocal," "waiver will not be reached as a product of inference or implication," and that such statutes should be "strictly construed," Spangler v. Florida State Turnpike Authority, 106 So.2d 421, 424 (Fla. 1958). This General Law which allows counties to obtain insurance and waive sovereign immunity from tort liability in certain instances was originally passed in 1953 and reads in part as follows:
"The public officers * * * of every county * * * which political subdivisions in the performance of their necessary functions own or lease and operate motor vehicles upon the public highways or streets of the cities and towns of the state, are hereby authorized, in their discretion, to secure and provide for such respective political subdivisions insurance to cover liability for damages on account of bodily injury, or death resulting therefrom, to any person, or to cover liability for damage to the property of any person, or both, arising from and in connection with the operation of any such motor vehicles * * *." Chapter 28220, Laws of 1953 (H.B.No. 657).
In 1957, Chapter 57-176 (S.B. No. 392), General Statutes, enlarged the County's permissive discretion to extend its liability insurance coverage to include its operation of aircraft in addition to motor vehicles. In 1959, Chapter 59-342 (H.B.No. 1018), General Statutes, enlarged the county's permissive discretion to extend its liability insurance coverage to include its operation of ferries in addition to motor vehicles and aircraft.
Then, in 1963, this statute was amended for the last time before the Orange County Board of County Commissioners took out the insurance policy involved in this present controversy. Chapter 63-499 (S.B. No. 659), General Statutes, in part reads as follows:
"The public officers * * * of every county * * * which political subdivisions in the performance of their necessary functions own or lease and operate motor vehicles upon the public highways or streets of the cities and towns of the *119 state or elsewhere, or own or lease and operate watercraft or aircraft, or own or lease buildings or properties or perform operations in the state or elsewhere are hereby authorized * * * to secure * * * insurance to cover * * * or to cover liability for damage to the property of any person or both, arising from or in connection with the operation of any such motor vehicles, watercraft or aircraft, or from the ownership or operation of any such buildings or property or any other such operations * * *." (Emphasis added).
In 1967, Chapter 67-39 (S.B. No. 60), General Statutes, enlarged the county's permissive discretion to extend its insurance coverage to include liability arising out of its "ownership or operation of any such buildings or property or livestock or any other such operations." "Livestock" was added to the list of insurables, and, therefore, it had not been included as "property or any other such operations" by the 1963 amendment.
Thus, it appears that the Legislature in 1963 did not intend that traffic signals be included under the category of "property" or "operations." The doctrine of ejusdem generis applies. This doctrine means that "where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated," Children's Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 347, 44 A.L.R. 698 (1926). The appellants' argument that the general language following the word "buildings" in said Chapter 63-499 is inclusive of all kinds or species of property owned by the county is not only inconsistent with the restrictive philosophy of waiver of immunity statutes in general and untenable under the doctrine of ejusdem generis, but it was conclusively refuted by the Legislature's inclusion at the 1967 session of another species of property, namely, "livestock," in the specific enumeration preceding the general language. Chapter 67-39 (S.B. No. 60), General Statutes. Hence, to accord merit to the appellants' argument would impute to the Legislature an intention to do a useless act in amending the statute at its 1967 session. The rule of construction, instead, is to assume that the Legislature by the amendment intended it to serve a useful purpose. Sharer v. Hotel Corp. of America, 144 So.2d 813, 817 (Fla. 1962); Webb v. Hill, 75 So.2d 596, 603 (Fla. 1954). Likewise, when a statute is amended, it is presumed that the Legislature intended it to have a meaning different from that accorded to it before the amendment.
Thus, the trial judge was correct in deciding that Fla. Stat. § 455.06 (1963), F.S.A., did not authorize a county to purchase general liability insurance coverage for a traffic signal and that this statute did not waive sovereign immunity in connection with these devices.

(II) "As the question of the constitutionality of the Special Act was not raised before the Court by anyone having power to raise such issue, the court was without jurisdiction to decide that question, and he erred in doing so."
Here, appellants claim that generally only a party whose rights are affected and who has an interest in defeating the statute can attack its constitutionality, County Com'rs of Franklin County v. State ex rel. Patton, 24 Fla. 55, 3 So. 471 (1888). Therefore, they reason that the Board of County Commissioners has no such interest and cannot attack the Special Act which authorizes it to waive governmental immunity and take out general liability insurance. This is a plausible argument. However, "the right and authority of a ministerial officer to challenge any Act providing for disbursement of public funds is an exception to the above-cited rule," Steele v. Freel, 157 Fla. 223, 25 So.2d 501, 503 (1946); see Kaulakis v. Boyd, 138 So.2d 505 (Fla. 1962). Since the Commissioners would have to expend public *120 funds to pay the insurance premiums, this special rule would appear to give them the necessary standing to question the constitutionality of the Special Act.

(III) "The Trial Court erred in holding that Chapter 29348, Special Acts, 1953, was unconstitutional."
Fla. Const. Art. III, § 22, reads, "Provision may be made by general law for bringing suit against the State as to all liabilities now existing or hereafter originating." Fla. Const. Art. VIII, § 1, reads, "The State shall be divided into political divisions to be called counties."
A county is a division of the state. It enjoys the state's sovereign immunity unless the Legislature by a general law provides otherwise, Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372 (1916). Thus, the Special Act here involved is unconstitutional because waiver of a county's sovereign immunity cannot be accomplished by local law.

(IV) "The Court erred in compelling appellants to allege in their complaint the statutory authority of Orange County in purchasing a liability insurance policy."
In suing a county a plaintiff must allege in his complaint the specific methods by which the county waives its sovereign immunity, Berryessa Cattle Co. v. Sunset Pacific Oil Co., 87 F.2d 972 (9th Cir.1937), and that such waiver must be "clear and unequivocal," Spangler v. Florida State Turnpike Authority, supra. The plaintiffs attempted to do this by separate amendments to the complaint. The trial judge held that § 455.06 (1963), was not broad enough to cover traffic devices. He struck the count which rested on this statute. Therefore, when the trial judge correctly held that there was no waiver of immunity under Fla. Stat. § 455.06 (1963), the way was paved to enable the insurance company to escape liability on its policy because it does appear from the facts that Orange County purchased the insurance policy on the strength of the 1963 amendment to § 455.06. Nevertheless, if the local act had been valid, the policy still would have been enforceable and immunity would have been waived. However, this Act, too, was invalid so there was no statutory foundation on which to ground the waiver.

(V) "The Trial Court erred by refusing to hold that by purchasing the insurance policy the county and its insurer had waived their rights to plead immunity from the suit in defense."
The trial judge ruled that the estoppel rationale in Auto-Owners Ins. Co. v. Palm Beach County, 157 So.2d 820 (Fla.2d Dist. Ct.App. 1963), cert. denied, 165 So.2d 176 (Fla. 1964), could be extended to apply against the County since in his view the insurance company was the real party in interest. He then held that in order to show such an estoppel the appellants must prove by a preponderance of the evidence that the Board of County Commissioners in fact bought the insurance policy under the Special Act and not under Fla. Stat. § 455.06. The judge further held that if the appellants proved this, then the insurance policy would be enforced because the County would be estopped from attacking the constitutionality of the Special Act and the County thereby would have waived its governmental immunity.
The trial judge made a mistake in ruling that Auto-Owners Ins. Co. v. Palm Beach County, supra, applied against the County in the present controversy. He detected the distinction, but held it immaterial. In Auto-Owners Ins. Co., the County was suing the insurance company to force it to pay on an insurance policy. The insurance company was claiming that the County had not waived its sovereign immunity because the statute was unconstitutional. The Second District Court of Appeal held that because the insurance company had received benefit under the statute, it was estopped from denying its validity. This is *121 not the circumstance in the present case. Here, the County is being sued and not the insurance company. In the cited decision the insurance company was estopped because it benefitted from receipt of premiums. The County itself derives no direct benefit from the statute whereby it waives its sovereign immunity. It merely pays out the premium; therefore, estoppel could not here apply against the County. The trial judge mistakenly interpreted the Auto-Owners Ins. Co. case, and needlessly required the appellants to prove that the Orange County Board of Commissioners relied on the Special Act in buying the insurance. This was error, but not prejudicial error because the ultimate judgment was correct.

(VI) "Where the defense of a county in a tort case has been assumed by the county's liability insurer, who is not a formal party to the cause, may the insurer, acting through the attorneys it has retained, assert as a defense to the action the county's sovereign immunity."
Appellants ask this Court to rule that the insurance company, not the County, is the real party in interest and that the insurance company should be added as a defendant. Appellants cite no authority for this proposition. We have no direct action statute that authorizes such procedure.
We conclude that the County had standing to question the constitutionality of the Special Act. The County was not estopped to deny its waiver of sovereign immunity because Auto-Owners Ins. Co. v. Palm Beach County, supra, does not apply to the County. The trial judge correctly held that the Special Act is unconstitutional and that Fla. Stat. § 455.06 (1963), F.S.A., is not broad enough to allow insuring traffic signals.
The judgments are affirmed.
It is so ordered.
CALDWELL, C.J., THOMAS and ADAMS (Retired), JJ., and SPECTOR, District Court Judge, concur.
ERVIN, J., dissents with opinion.
DREW, J., dissents and agrees with ERVIN, J.
ERVIN, Justice (dissenting):
The majority opinion points out that apparently the County and the insurer assumed at the time the policy was issued F.S. Section 455.06, F.S.A. authorized liability coverage for the County's traffic signal device. When it is considered the modern trend is to relax the rule of sovereign immunity from tort liability and to that end authorize insurance protection for members of the public damaged or injured by facilities or operations of the state, its subdivisions or agents, similarly as in private enterprise, it is reasonable to believe the County and the insurer were correct in assuming the Legislature intended to, and did, authorize liability coverage for all County properties.
The legislative object of the 1963 amendment (Ch. 63-499) of said section was not to confine insurance coverage to county buildings or structures, but to authorize such protection for the public from damage or injury from all county properties. The general words "property" and "properties" are much broader and go far beyond the word "buildings" in scope and logically should not be restricted to the latter by the rule ejusdem generis. For liability coverage by the County to be comprehensively inclusive in order to avoid the immunity implied in Section 22, Article III, State Constitution, and afford the public insurance protection generally from damage or injury resulting from all property owned and operated by the County, the words "county properties" should be given separate application and not be restricted to county buildings or structures.
"The rule of ejusdem generis is far from being one of universal application. *122 It is neither final nor conclusive; there are many cases to which claims of the applicability of the doctrine are denied, and in which general terms in a statute are given meanings beyond the specific terms preceding them. In any event, the rule of ejusdem generis does not necessarily require that the general term be limited in its scope to the identical things specifically enumerated. * * *
"* * * If, on consideration of the context and whole law upon the subject, and the purposes sought to be effected, it is apparent that the legislature intended the general words to go beyond the class specially designated, the rule does not apply.
"The rule of ejusdem generis does not apply to restrict the operation of a general expression where the specific things enumerated have no common characteristics, and differ greatly from one another. Moreover, where the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class or genus, there can be nothing ejusdem generis left for the rule to operate on, and a meaning must be given to the general words different from that indicated by the specific words, or there can be ascribed to them no meaning at all."
See 50 Am.Jur. Statutes § 250, pages 246-48.
The later inclusion by the 1967 Legislature of the word "livestock" is not material to an interpretation of the statute as it existed in 1963. The 1967 Legislature may have been uncertain whether the word "properties" in the 1963 amendment related to both animate and inanimate county ownerships. Its later inclusion of the word "livestock" should not be deemed significant in determining whether the earlier language of the statute was subject to the rule ejusdem generis in the particulars considered.
In sum, where the obvious purpose of the subject legislation is considered, it is too technical to believe the Legislature had in mind only partial coverage of county property and because of the rule ejusdem generis intended to exclude coverage of all county property not in the class of buildings.
DREW, J., concurs.