Dear Mr. Igwe:
As the Independent Auditor General for the City of Miami, you ask substantially the following question:
May proceeds from the local option fuel tax authorized in section 336.025, Florida Statutes, be used to fund operational expenditures for storm drainage, street lighting, and traffic signalization?
In sum:
Local option fuel tax revenues levied pursuant to section 336.025, Florida Statutes, may not be used to pay operational expenditures for storm drainage, street lighting, and traffic signalization.
You state that operational expenditures include electricity and water service used to operate traffic signals, street lights, and storm water pumping stations.
Section 336.025, Florida Statutes, authorizes the levy of local option fuel taxes (LOFT) on motor fuel and diesel fuel for local transportation system projects.[1] Fuel taxes levied pursuant to the statute, however, may be used by county and municipal governments "only for transportation expenditures."[2]
The statute defines "transportation expenditures" for purposes of the act as:
"[E]xpenditures by the local government from local or state shared revenue sources, excluding expenditures of bond proceeds, for the following programs:
(a) Public transportation operations and maintenance.
(b) Roadway and right-of-way maintenance and equipment and structures used primarily for the storage and maintenance of such equipment.
(c) Roadway and right-of-way drainage.
(d) Street lighting.
(e) Traffic signs, traffic engineering, signalization, and pavement markings.
(f) Bridge maintenance and operation.
(g) Debt service and current expenditures for transportation capital projects in the foregoing program areas, including construction or reconstruction of roads and sidewalks."[3] (e.s.)
When a statute enumerates the things upon which it operates, it is ordinarily construed as excluding from its operation all things not expressly mentioned.[4] Thus, a listing of allowed expenditures for LOFT revenues precludes use of such revenues for any other purpose.
The statute clearly authorizes the use of LOFT revenues to fund programs that, among others, provide roadway and right-of-way drainage, street lighting, and traffic signalization.
While not applicable in this instance, section 336.025(8), Florida Statutes, authorizes the governing body of a county with a population of 50,000 or less on April 1, 1992, or the governing body of a municipality within such a county to use local option fuel tax revenues to "fund infrastructure projects, if such projects are consistent with the local government's approved comprehensive plan[.]" The paragraph further states: "Except as provided in subsection (7), such funds shall not be used for the operational expenses of any infrastructure."
Thus, it would appear that the pervasive intent of section 336.025, Florida Statutes, is to provide a revenue source to fund certain road system infrastructure, which in specific instances includes the operation and maintenance costs of such infrastructure. The Legislature has used the terms "maintenance" and "operation" separately. To interpret them to mean the same thing would mean that the Legislature had enacted redundant, useless legislation.[5] The statute should be read such that each term is given its distinct meaning.[6] The projects encompassing drainage, street lighting, and traffic signalization do not specifically state that the cost of their operation is included and would not, therefore, be an authorized expenditure of LOFT funds . This office, however, has commented upon the use of local option fuel tax revenues for the maintenance of a drainage system.[7]
Had the Legislature wished to include the operational cost of street lighting, traffic signalization, and storm drainage, it could easily have done so, as it has for bridges and public transportation. Until legislatively or judicially determined otherwise, therefore, it is my opinion that local option fuel tax revenues levied pursuant to section 336.025, Florida Statutes, may not be used to pay for the operational cost for street lighting, traffic signals, and storm drainage.[8]
Accordingly, it is my opinion that proceeds from the local option fuel tax revenues levied pursuant to section 336.025(1)(a), Florida Statutes, may not be used to pay operational expenditures for storm drainage, street lighting, and traffic signalization.
Sincerely,
Bill McCollum Attorney General
BM/tals
[1] Section 336.025(1)(a), Fla. Stat., states: "[T]here may be levied as provided in ss. 206.41(1)(e) and 206.87(1)(c) a 1-cent, 2-cent, 3-cent, 4-cent, 5-cent, or 6-cent local option fuel tax upon every gallon of motor fuel and diesel fuel sold in a county and taxed under the provisions of part I or part II of chapter 206." Section 336.025(1)(b), Fla. Stat., provides: "In addition to other taxes allowed by law, there may be levied as provided in s. 206.411(1)(e) a 1-cent, 2-cent, 3-cent, 4-cent, or 5-cent local option fuel tax upon every gallon of motor fuel sold in a county and taxed under the provisions of part 1 of chapter 206. The tax shall be levied by an ordinance adopted by a majority plus one vote of the membership of the governing body of the county or by referendum."
[2] See ss. 336.025(1)(a)2. and 336.025(1)(b)3., Fla. Stat.
[3] Section 336.025(7), Fla. Stat.
[4] See Thayer v. State,335 So. 2d 815, 817 (Fla. 1976).
[5] See, e.g., Smith v. Piezo Technology and ProfessionalAdministrators, 427 So. 2d 182 (Fla. 1983); Arnold v.Shumpert, 217 So. 2d 116 (Fla. 1968); Neu v. Miami HeraldPublishing Company, 462 So. 2d 821 (Fla. 1985) (in construing legislation, courts should not assume Legislature acted pointlessly); Sharer v. Hotel Corporation of America,144 So. 2d 813 (Fla. 1962) ("[i]t should never be presumed that the legislature intended to enact purposeless and therefore useless, legislation. Legislators are not children who build block playhouses for the purpose, and with the gleeful anticipation, of knocking them down.").
[6] See Pinellas County v. Wooley,189 So. 2d 217 (Fla. 2d DCA 1966) (generally, words in a statute will not be construed as surplusage if a reasonable construction which will give them some force and meaning is possible).
[7] See Op. Att'y Gen. Fla. 99-70 (1999) (taxes collected pursuant to section 336.025(1)(a), Florida Statutes, could be used to pay for canal dredging to the extent such work was part of roadway and right-of-way drainage maintenance; such tax revenues could not be used for other canal-related activities, such as the removal of silt and other materials deposited in the canals to prevent water quality degradation, since prevention of water pollution is not a program included within "transportation expenditures"). Cf. Op. Att'y Gen. Fla. 97-25 (1997), in which it was concluded that the county could expend s. 336.025(1)(b), Fla. Stat., tax revenues for the operation and maintenance of a public transportation facility where the capital improvements element of the county's comprehensive plan identifies the need for such a facility.
[8] See Op. Att'y Gen. 92-20 (1992) (the power of a political subdivision to levy taxes must be expressly and distinctly granted, and must be exercised in strict conformity with the terms of the grant; a legislative grant of taxation power will be strictly construed, since the reasonable presumption is that the state has granted in clear and unmistakable terms all that it intended to grant). Cf. Joe Hatton, Inc. v. Conner,240 So. 2d 145 (Fla. 1970) (legislative power to tax may be exercised through subordinate governmental agencies within definite limitations fixed by law).