323 So.2d 53 (1975)
Virginia L. SURETTE et al., Appellants,
v.
Arthur GALIARDO, Jr., et al., Appellees.
No. 74-928.
District Court of Appeal of Florida, Fourth District.
November 21, 1975.
Rehearing Denied December 30, 1975.
*54 Edward A. Perse of Horton, Perse & Ginsberg, Miami, and Sepler & Sussman, Hialeah, for appellants.
James E. Tribble of Blackwell, Walker, Gray & Powers, Miami, for appellee School Bd. of Broward County.
William S. Gardella of Walton, Lantaff, Schroeder, Carson & Wahl, Fort Lauderdale, for appellees School Bd. of Broward County and Pacific Indemnity Co.
MAGER, Judge.
This is an appeal by Virginia L. Surette, plaintiff below, from a final judgment entered pursuant to a directed verdict in favor of the Broward County School Board and its liability insurer, Pacific Indemnity Company, defendants below.
The cause of action arose as a result of the death of plaintiff's minor child who was struck by a car while waiting at a school bus stop site in Broward County.[1] The complaint alleged, among other things, the school board's negligence in its designation of the school bus stop site where the accident occurred and in routing the school bus to the specific location where plaintiff's child was waiting; plaintiff further alleged, in part, that the school board did not properly mark the designated school bus location in question and was negligent in not providing a safe place for plaintiff's child to stand while awaiting the school bus pick-up.
The plaintiff's complaint further asserted that the school board had waived its sovereign immunity pursuant to sec. 455.06, F.S., by the purchase of general liability insurance from defendant Pacific Indemnity. Defendant filed an answer denying plaintiff's allegations and moved to dismiss on the basis, among other things, that the doctrine of sovereign immunity was applicable. The action was tried before a jury and at the conclusion of plaintiff's case the trial court granted a directed verdict in favor of the defendants school board and Pacific Indemnity primarily on the basis that the purchase of the liability insurance policy in question did not constitute a waiver of sovereign immunity within the contemplation of sec. 455.06, F.S.
As a basic observation and as a general proposition the county and its *55 agencies are immune from tort liability in the absence of a general statute permitting suit as to such liability. 8 Fla.Jur. Counties § 100; Kaulakis v. Boyd, Fla. 1962, 138 So.2d 505; Brandeis v. Dade County, Fla. App. 1969, 226 So.2d 873; cf. Arnold v. Shumpert, Fla. 1968, 217 So.2d 116. With the enactment of sec. 455.06, F.S., the legislature adopted a general law permitting the county, the school board and certain other governmental entities to purchase liability insurance for certain purposes and thereby waive sovereign immunity from tort liability in certain instances.[2] Subsection (1) of sec. 455.06 provides as follows:
"(1) The public officers in charge or government bodies, as the case may be, of every county, district school board, governmental unit, department, board or bureau of the state, including tax or other districts, political subdivisions and public and quasi-public corporations, other than incorporated cities and towns, of the several counties and the state, all hereinafter referred to as political subdivisions, which political subdivisions in the performance of their necessary functions own or lease and operate motor vehicles upon the public highways or streets of the cities and towns of the state or elsewhere, or own or lease and operate watercraft or aircraft or own or lease buildings or properties or perform operations in the state or elsewhere are hereby authorized, in their discretion, to secure and provide for such respective political subdivisions, their agents and employees while acting within the scope of their employment, insurance to cover liability for damages on account of bodily or personal injury or death resulting therefrom, to any person, or to cover liability for damage to the property of any person or both, arising from or in connection with the operation of any such motor vehicles, watercraft or aircraft, or from the ownership or operation of any such buildings or property or livestock or any other such operations, whether from accident or occurrence; and to pay the premiums therefor from any general funds appropriated or made available for the necessary and regular expense of operations of such respective political subdivisions, without the necessity of specific appropriation or specification of expense with respect thereto. Provided, that in those instances where, by general law, provision has been made for the public officer in charge or governing body of such political subdivision to provide such insurance, this section shall not be construed to impair any such previous acts but shall be construed as cumulative thereto." (Emphasis added.)
The record reflects that the school board purchased a comprehensive general liability insurance policy from Pacific Indemnity which provided for bodily injury and property damage liability coverage for an "occurrence" which was defined to embrace "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured ...".
The policy in question specifically excluded bodily injury or property damage liability arising out of the ownership, maintenance, operation or use of any automobile owned, leased or operated by the school board. Clearly, therefore, as the trial court correctly observed, the policy in question did not cover an accident resulting from an automobile (or bus) owned, leased or operated by the school board. However, the circumstances in the instant case do not involve the ownership, maintenance, operation, use, loading or unloading *56 of a school bus. The plaintiff's minor child was allegedly struck and killed by an automobile driven by one Joan Galiardo who had no relation to the school board or any of its activities. The presence of the school board and its insurer in the action below was not occasioned by the ownership, maintenance, operation, use, loading or unloading of a school bus but, rather, by the school board's alleged negligence in its selection, designation, location and maintenance of school bus stop sites.
In this regard the provisions of section 234.03, providing for the purchase of liability insurance for bodily injury, damage or death resulting to pupils by reason of the ownership, maintenance, operation or use of school buses "while said pupils are being transported to or from a school or school activity" are not controlling. The fact that a liability policy is required under sec. 234.03 for the operation of school buses does not preclude the potential application of sec. 455.06 nor is it dispositive of the issue of whether the particular activity in question falls within the terms and conditions of said sec. 455.06.
A reading of sec. 455.06 reflects the clear intent of the legislature to authorize a district school board to purchase liability insurance, when, in the performance of a "necessary function" said school board "performs operations in the state", i.e. operates a school bus transportation system. The purchase of insurance to cover liability for damage on account of bodily or personal injury or death resulting from "such operations" constitutes a waiver of sovereign immunity. Section 455.06 additionally provides for the purchase of liability insurance and a corresponding waiver of tort liability where the agency, in performance of its necessary functions, owns, leases or operates motor vehicles, watercraft, aircraft or owns or leases buildings. However, we are not concerned here with the category of motor vehicles, watercraft, aircraft, buildings or properties  but, rather, we are concerned with the category of activity, i.e. "or perform operations in the state".[3]
A review of applicable statutes, rules and regulations pertaining to school bus transportation reflects a statutory duty, responsibility and obligation of school boards to provide bus transportation for pupils enrolled in public schools, such transportation operation encompassing not only the physical (safety) aspects of the vehicle and the driver qualifications but including such considerations as school bus routes, schedules and designated school bus stops. See sections 230.23(8), 234.01-11, F.S.; Rule 6A-3.17, 3.18, Rules and Regulations of Florida State Board of Education. If ever there was a vivid example of the performance of an "operation in the state" in furtherance of a "necessary function" it would be exemplified by school bus transportation, routing, scheduling and school bus stop site location designations.[4]
It is our opinion therefore that the language of sec. 455.06 is sufficiently broad and descriptively flexible so as to encompass the necessary function of operating a school bus transportation system. The purchase of liability insurance pursuant to said section constitutes a waiver of the school board's sovereign immunity from damages resulting from bodily injury or death arising from or in connection with such school transportation.
We have not overlooked the decision in Arnold v. Shumpert, supra. We find the *57 factual circumstances in that case to be completely distinguishable from the instant situation; hence the specific holding in Arnold is inapplicable. See Buffkin v. Board of County Commissioners of Brevard County, Fourth District Court of Appeal, 320 So.2d 876 opinion filed October 17, 1975.
In Arnold, the court found that although the insurance policy covered the negligent operation of a traffic light, the statute, sec. 455.06, did not include a traffic light within the category of property for which insurance could be purchased and liability waived. By marked contrast, in the instant case we are, for example, not concerned with the category of school board "property", but, rather, we are concerned with the category of a necessary "operation". Moreover, there is a vast distinction between the permissive function of owning and operating traffic signals and the mandatory governmental function of operating a school bus transportation system. Cf. Gordon v. City of West Palm Beach, Fourth District Court of Appeal, 321 So.2d 78 opinion filed October 10, 1975; Clifton v. City of Fort Pierce, Fourth District Court of Appeal, 319 So.2d 195 opinion filed September 12, 1975.
It is important to point out, that our determination that the operation of a school bus transportation system falls within the category of subjects for which the purchase of liability insurance would constitute the waiver of tort immunity, does not dispose of the issue of whether the particular policy in question provided coverage for the specific accident giving rise to the action below.[5] It is unclear from a reading of the final judgment and the record of proceedings pertaining thereto whether the trial court reached this issue or intended to resolve it. The trial court's entry of a directed verdict appears to have been predicated solely upon the language of sec. 455.06, as interpreted by Arnold v. Shumpert, supra. Without precluding further consideration by the trial court of this issue we are inclined to the view that by the very definition of the word "occurrence", supra, the policy in question is sufficiently broad so as to include coverage for the subject accident. Cf. 18 Fla.Jur., Insurance, § 725; 44 Am.Jur.2d, Insurance, § 1433; Phoenix Insurance Company v. Branch, Fla.App. 1970, 234 So.2d 396.
Concluding as we do that the trial court erred in directing a verdict for the defendants and entering a final judgment thereon on the basis of its application of sec. 455.06, F.S., the cause is reversed and remanded for a new trial.[6] In this regard, some comment should be made regarding another appellate point raised by the plaintiff.
The plaintiff contends that the trial court erred in refusing to require the defendant school board to produce for admission into evidence an incident report (of the accident) prepared by the defendant board's agents and employees. Except for the argument of counsel contained in the record concerning the privileged nature of the report the record is somewhat silent as to whether the incident report was, in fact, prepared and submitted (to the insurer) *58 for use in connection with an anticipated settlement or defense of a claim in which instance such report would be privileged. See Sligar v. Tucker, Fla.App. 1972, 267 So.2d 54.
The decision in Vann v. State, Fla. 1956, 85 So.2d 133, 138, cited in Sligar, contains the following statement from 22 A.L.R.2d 659, 660:
"`According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.'" (Italics added).
See also Grand Union Co. v. Patrick, Fla. App. 1971, 247 So.2d 474. The record does not reflect that the incident report in question was a report by an insured to its insurer within the contemplation of the aforementioned authorities. Since the rules of discovery permit a party to secure the production of documents for trial, the burden of establishing that the particular document is privileged and precluded from discovery rests on the party asserting that privilege (unless it appears from the face of the document sought to be produced that it is privileged). 23 Am.Jur.2d, Depositions and Discovery, pp. 508-9. Our review of the present record does not reflect that the privileged character of the document was clearly established so as to bring the report within the protection recognized in Sligar v. Tucker, supra.
Accordingly, for the reasons heretofore stated the final judgment is reversed and the cause remanded.
CROSS and OWEN, JJ., concur.
NOTES
[1] The complaint below also named as defendants, Arthur Galiardo, Jr., the owner of the automobile which struck the child, and Joan Galiardo, the operator of the automobile, and their insurer, Liberty Mutual Insurance Company. Neither of these parties are involved in this appeal.
[2] Examples of other statutes involving statutory waiver of immunity are sections 234.03 and 768.28, F.S. It might be well to point out that with the adoption of 768.28-30, F.S., which became fully operative on January 1, 1975, any question regarding the waiver of tort immunity will be moot and no longer determined by an interpretation of the language contained in sec. 455.06, infra.
[3] In this regard the facts are clearly distinguishable from the decision in Arnold v. Shumpert, supra, discussed somewhat in more detail, infra.
[4] Recent decisions of the United States Supreme Court and lower federal courts on the subject of school busing have caused school bus transportation to rise to such proportions within the school program so as to reflect not only the performance of a "necessary function" but a "required" one as well.
[5] To illustrate the necessity of a consistency (and a distinction) between policy language and statutory language we would point out that it is possible for language in an insurance policy to clearly cover a particular risk or circumstance (such as a traffic light in the Arnold case) while the language of the statute would not embrace that risk or subject so that the purchase of insurance would not constitute a waiver of liability. Conversely, the language of the statute may clearly embrace the subject matter for which insurance is desired (as in the instant case) while the language of the policy may not embrace that particular risk or even specifically exclude certain aspects thereof thereby precluding a waiver of tort liability.
[6] It is important to point out that our decision does not resolve any issue pertaining to the negligence vel non of the school board as it clearly appears that the trial court never reached that issue.