339 So.2d 1113 (1976)
CIRCUIT COURT OF TWELFTH JUDICIAL CIRCUIT, and the Honorable Evelyn Gobbie, As Circuit Judge Thereof, Appellant,
v.
DEPARTMENT OF NATURAL RESOURCES of the State of Florida, Appellee.
No. 47873.
Supreme Court of Florida.
November 24, 1976.
*1114 C. Eugene Jones, of Ginsburg & Byrd, Sarasota, for appellant.
Jack W. Pierce, General Counsel, Dept. of Natural Resources, Tallahassee, Robert L. Shevin, Atty. Gen., and Thomas A. Harris, Asst. Atty. Gen., for appellee.
SUNDBERG, Justice.
This case appears before us as the result of a tragic mishap which occurred in Oscar Scherer State Park in Sarasota, Florida. On August 16, 1973, sixteen-year-old Sharon Holmes, having paid an entrance fee, was swimming in a man-made lake located in the park when she was attacked, bitten and killed by an alligator.
Mr. and Mrs. Burton Holmes, as Sharon's parents and personal representatives, brought suit against the Florida Department of Natural Resources, the state agency responsible for administering the state park, and against two other defendants not now before this Court. The Department's alleged liability was predicated on theories of negligence, strict liability in tort, and breach of contract. The plaintiff further alleged that the Department had waived sovereign immunity by engaging in the proprietary function of operating the park.
The Department filed a motion to dismiss the complaint for lack of jurisdiction under the doctrine of sovereign immunity. Finding that under the facts alleged in the complaint the Department had waived sovereign immunity, the trial judge denied the motion.
Appellee then took an interlocutory appeal to the District Court of Appeal, Second District, which was dismissed on the authority of State Road Dept. v. Brill, 171 So.2d 229 (Fla. 1st DCA 1964).
The Department then filed a suggestion for a writ of prohibition with the District Court of Appeal. That court issued the writ, reasoning that the circuit court lacked subject matter jurisdiction because the Department was protected from suit by sovereign immunity. Department of Natural Resources v. Circuit Court of the 12th Judicial Circuit, 317 So.2d 772.
It is from this decision of the District Court that the Honorable Evelyn Gobbie ("the appellant"), Circuit Court Judge of the Twelfth Judicial Circuit and the trial judge in this case, takes an appeal to this Court. We have jurisdiction under Article V, Section 3(b)(1), Florida Constitution, because the District Court of Appeal construed the Florida sovereign immunity provision, Article X, Section 13, which reads as follows:
"Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."
Appellant asserts that the foregoing language does not preclude waiver of sovereign immunity by means other than legislative enactment or constitutional amendment. Thus it is not fatal to appellant's argument to admit that Section 768.28, Florida Statutes, the current statutory waiver of sovereign immunity in Florida, was not in effect at the time Sharon Holmes was killed. Appellant goes on to argue that by engaging in the proprietary, as opposed to governmental, activity of operating a park and campground, appellee has effectively waived the protection of sovereign immunity.
Contrary to appellant's position, Florida courts have often interpreted the language in Article X, Section 13, supra, as providing absolute sovereign immunity for the state and its agencies absent waiver by legislative enactment or constitutional amendment. E.g., Spangler v. Florida State Turnpike Auth., 106 So.2d 421 (Fla. 1958); Hampton v. State Board of Educ., 90 Fla. 88, 105 So. 323 (1925); Buck v. McLean, 115 So.2d 764, *1115 766 (Fla. 1st DCA 1959). Cases such as Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), this Court's landmark decision modifying the sovereign immunity of municipalities, are distinguishable precisely because they involve municipal corporations, not the state or its agencies. The governmental/proprietary distinction, which has on occasion been viewed as a test for waiver of sovereign immunity, has almost invariably been crucial only in the cases involving municipalities.[1] See Seligman & Beals, The Sovereignty of Florida Municipalities, 50 Fla.B.J. 338 (1976), for the view that existing precedent has led to some confusion over the viability of the distinction in the municipal area. We are not called upon today to reconcile whatever conflict in precedent may exist in that area of the law. Seligman and Beals further state, "While the State of Florida has always enjoyed sovereign immunity with respect of the torts of state employees, municipalities have not enjoyed full derivative immunity," and appellant has been unable to direct our attention to a single case which undermines the accuracy of that statement.
When reduced to its essentials, appellant's argument, as we see it, is built around three principal cases. Suwannee County Hospital Corp. v. Golden, 56 So.2d 911 (1952), is relied on for the proposition that a county-owned and operated activity is not immune from suit if it is engaged in a proprietary as opposed to a governmental function. Butts v. County of Dade, 178 So.2d 592 (Fla. 3d DCA 1965), allegedly extends the waiver of sovereign immunity for proprietary functions undertaken by municipalities to such activities performed by counties as well. Since counties are subdivisions of the state, Butts, it is argued, should be read as affecting the issue of the applicability of the governmental/proprietary distinction to entities such as the state agency which is a party defendant in this case. In addition to Butts, Gay v. Southern Builders, Inc., 66 So.2d 499 (Fla. 1953), is said to stand for the proposition that suits against governmental agencies are allowable on a contract theory, one of the theories of action utilized by the plaintiffs in this case. We will deal with these three decisions seriatim.
In Suwannee County Hospital Corp. v. Golden, supra, a husband and wife sued the appellant, a non-profit corporation created by a special act setting up a county hospital district, to recover damages for injuries occasioned by the negligent application of hot water bottles to the wife while she was a patient in the defendant's hospital. The Supreme Court held that the special act which immunized the hospital from liability for the negligent acts of its officers, agents and employees did not preclude recovery by an injured, paying patient. We read this decision as holding only that a public corporation whose functions are local rather than state-wide does not share the sovereign immunity of the state. The attempted statutory immunization of a local hospital district cannot be equated with a constitutional immunity from suit by which, as noted previously, the appellee is protected. See Loucks v. Adair, 312 So.2d 531 (Fla. 1st DCA 1975). So Suwannee County Hospital Corp. is hardly controlling of the result in the instant case.
Butts v. County of Dade, supra, held that paying passengers may sue a county to recover for injuries received due to negligence in the operation of the county bus system, which that court found to be a proprietary endeavor. The case is immediately distinguishable from the instant decision, therefore, as involving a county rather than a state agency. Without expressly overruling the Butts decision, we question the wisdom of its apparent extension of the Hargrove rationale to the county level. Unlike a municipality, a county has no corporate fund or other proprietary holding. It has long been held that counties act as arms of the state. Thus a persuasive argument, and one which this Court has accepted previously, could be made for including *1116 counties in the Constitution's protection of the state from legal liability. See Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372 (1916). Whether such an argument would be accepted by this Court today is a matter we need not yet decide. In any event, we do not find Butts, based as it seems to be on dicta from the Suwannee County decision, to be persuasive authority for appellant's point of view.
We adopt as our own the lengthy analysis of the relevance of Gay v. Southern Builders, Inc., supra, to the instant controversy which Judge Hobson authored for the District Court of Appeal:
"In Gay, supra, Southern Builders entered into a contract with the Board of Commissioners of State Institutions to construct certain buildings for the State of Florida. The Board took the position that the building was not constructed in accordance with the plans and specifications and Southern Builders contended that it was entitled to payment under the contract plus damages for breach of contract. Southern Builders filed a claim with and against the Board. Three persons were named, who were called arbitrators, and held hearings and investigations as to the contentions of the parties. They filed a report with the Board; whereupon, the Board approved for final payment the amounts as recommended by the arbitrators.
"The claim as adopted by the Board was presented to the comptroller who paid all the claim except that portion which he decided was for tort arising out of breach of contract. Southern Builders filed suit against the comptroller for payment of the claim in full as it had been approved for final payment by the Board. The circuit court rendered judgment for Southern Builders and the comptroller appealed. We feel the Supreme Court affirmed the lower court on the basis that the claim was approved by the Board for payment; that there was a determination by the Board that the amount ordered paid was just and due by the State to Southern Builders; and that in effect the suit was not a suit against the State for breach of contract but was for the enforcement of a claim previously determined to be due and owing by the State. The suit was actually seeking to enforce the comptroller to comply with the Board's directions.
"There is dicta in the Gay case, supra, which could be interpreted as saying that the State and its agencies are not immune from suit for breach of contract. If this is what Gay, supra, holds, it is in direct conflict with a long precedent of law first set forth in 1895 in Bloxham v. Florida Cent. & P.R. Co., 35 Fla. 625, 17 So. 902, followed by Hampton v. State Board of Education, 1925, 90 Fla. 88, 105 So. 323, and State v. Love, 1930, 99 Fla. 333, 126 So. 374. We have found no case where our Supreme Court has held that under the facts and circumstances of this case the State or its agencies are not entitled to invoke sovereign immunity." 317 So.2d at 774-775.
Section 768.28, Florida Statutes, constitutes a limited waiver of the state's sovereign immunity, effective July 1, 1974, for executive departments of the State of Florida and January 1, 1975, for all other agencies and subdivisions of the state. Section 768.30, Florida Statutes. Such waiver is coextensive with insurance coverage obtained by the agency involved. Consequently, a source of payment of claims other than the treasury of the state is provided incident to the waiver, a fact which obviates the primary concern expressed in the decisions applying the sovereign immunity doctrine.
It is true that the plaintiffs in this case are denied the benefits of this statute solely because of the timing of the incident by which their daughter was killed. While that fact may seem a capricious and arbitrary result, it is nevertheless inevitable and one which inheres in the legislative process under a constitutional government. Yet the plaintiffs are not wholly without remedy, for, as the Department suggests, they may file in the Legislature a claims bill to compensate them for the loss which they have suffered. Absent legislation *1117 waiving the state's sovereign immunity on August 16, 1973, this Court cannot authorize relief through the judicial process.
The decision of the District Court of Appeal is affirmed.
OVERTON, C.J., and BOYD, ENGLAND and HATCHETT, JJ., concur.
ROBERTS and ADKINS, JJ., dissent.
NOTES
[1] Suwannee County Hospital Corp. v. Golden, infra, and Butts v. County of Dade, infra, which are apparently the sole exceptions to this general statement, will be discussed later.