362 So.2d 74 (1978)
Leona McPHEE, As Personal Representative of the Estate of Brenda Annette McPhee, Deceased, and On Behalf of Octavian Demetrius McPhee and Gregory Terrell McPhee, Surviving Minor Children, Appellant,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, and Continental Casualty Company, Appellees.
No. 77-1809.
District Court of Appeal of Florida, Third District.
August 15, 1978.
*75 Marlow, Shofi, Ortmayer, Smith & Spangler, Greene & Cooper and Sharon L. Wolfe, Miami, for appellant.
Carey, Dwyer, Cole, Selwood & Bernard and Steven R. Berger, Miami, for appellees.
Before HENDRY, BARKDULL and HUBBART, JJ.
BARKDULL, Judge.
This is an appeal by the plaintiff-appellant, Leona McPhee, as personal representative of the Estate of Brenda Annette McPhee, deceased, and on behalf of Octavian and Gregory McPhee, surviving minor children, from a final summary judgment in favor of Dade County and its insurer, Continental Casualty Company.
The decedent met her death by drowning at Virginia Beach, a County park. From the record it appears that the decedent did not know how to swim and knew there was no lifeguard present. There were no other people on the beach; at the time the accident happened the sun had gone down completely. The hours of the operation of the park were from sunrise to sunset. There were 18" X 36" signs with the warning "Caution  Deep Water, Swimming Prohibited Beyond This Point" posted up and down the shoreline along the beach at the *76 park site, approximately 50 yards apart. Plaintiff's sister testified at her deposition that she saw the warning sign, but didn't read it; that she didn't have any difficulty in seeing it but that she didn't pay any attention to it. Both the decedent and her sister were able to read and should have seen the warning. After being notified of the danger involved, the decedent chose to enter the water; her actions were the cause of her death.
The appellant contends that the County was negligent in failing to erect and maintain safety barriers in the form of fences or gates a sufficient distance in the water along the perimeter of the shoreline, to protect swimmers and bathers; in failing to inform and/or adequately warn the public of the alleged dangerous conditions; in failing to have lifeguards stationed on the beach throughout the hours that the beach was open to the public; in failing to have necessary and adequate life-saving equipment.
At the time of plaintiff's drowning the park was closed; it was after sunset; the lifeguards' duties terminated when the park closed. The appellant's contention that fences and/or barriers should have been constructed in the water is not well-taken, when viewed in light of the fact that much of the County's land abuts on the water and that citizens have a right to use the navigable waters of this State. Brickell v. Trammell, 77 Fla. 544, 82 So. 221 (1919); City of Miami Beach v. Hogan, 63 So.2d 493 (Fla. 1953); State v. T.O.L. Inc., 206 So.2d 69 (Fla. 4th DCA 1968).
From the record, the drowning was caused by the decedent's own negligence in swimming in an area after the close of the park when she, in fact, did not know how to swim. When the movant shows that a plaintiff's negligence is the sole proximate cause of the injury, courts will grant a summary judgment in his favor. Wills v. Sears Roebuck Co., 351 So.2d 29 (Fla. 1977). Dade County owed no duty that was breached and is not liable for any negligence in the case at bar.
As a defense, the County pleaded the doctrine of sovereign immunity and even if negligent would be relieved of liability because of said doctrine.[1] In Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372 (1916), the following is found:
* * * * * *
"While a county may, in some respects, resemble a municipality in that both organizations deal with public interests, their differences are so great that the cases discussing the latter's liability in damages for the negligent omission to perform a public duty are not analogous to those in which a liability is sought to be imposed upon a county. The one feature which sufficiently distinguishes them is that the counties are under the constitution political divisions of the state, municipalities are not; the county, under our Constitution, being a mere governmental agency through which many of the functions and powers of the state are exercised. County of San Mateo v. Coburn, 130 Cal. 631, 63 P. 78, 621. It therefore partakes of the immunity of the state from liability. Many of the powers exercised by a municipality, such as building and maintaining streets, erecting and operating water supply systems, lighting and power plants, are, in their nature and character, corporate rather than governmental. The corporation being organized voluntarily by the citizens of the locality for the purpose of local government, it is given the power and charged with the duty by the state of keeping the streets in a safe condition. 2 Dillon's Munic. Corp. (4th ed.) § 1034; City of Key West v. Baldwin, 69 Fla. 136, 67 So. 808. The citizens of a municipality have a proprietary interest in the property and funds of the municipality; the citizens of a county have not. * * *"
* * * * * *
*77 More recently, the Supreme Court held, in Kaulakis v. Boyd, 138 So.2d 505, 507 (Fla. 1962), that "Counties, * * * as political subdivisions constitute a part of the machinery of the state government. Therefore, it has been held that they partake of the sovereign immunity from liability." This immunity is embodied in Article X, Section 13, Constitution of Florida (1968).
The immunity of the County from suit is absolute. Buck v. McLean, 115 So.2d 764 (Fla. 1st DCA 1959). It makes no difference whether the activity of the County is involved in is classified as governmental or proprietary; the immunity is unqualified. Buck v. McLean, supra; Dept. of Natural Resources v. Circuit Court of Twelfth Judicial Circuit, 317 So.2d 772 (Fla. 2d DCA 1975). The court in Buck, referring to the above-quoted passage in Keggin, stated:
* * * * * *
"Appellants insist that the decisions of our Supreme Court in Bragg and Richter have been receded from and overruled by its decision in Hargrove. (Citation omitted). With this contention we cannot agree. The Hargrove case involved a tort action against the Town of Cocoa Beach, a municipal corporation. In holding that under the doctrine of respondeat superior a municipal corporation may be liable in tort for the negligent act of its police officer whether committed in the discharge of a governmental or proprietary function, the court receded from its former decisions holding to the contrary. There is nothing in this decision which says, or from which it can be reasonably inferred, that the rule there announced is likewise applicable to the State of Florida, or its several counties and boards of public instructions. The broad and well defined distinction between a municipal corporation on the one hand, and a county or other agency of the State on the other, was ably discussed by our Supreme Court in the Keggin case. * * *" [emphasis added]
* * * * * *
The liability of a county is fundamentally different from that of a municipality.
The appellant relies on several cases involving Dade County which are distinguishable. In Butts v. County of Dade, 178 So.2d 592 (Fla. 3d DCA 1965), an action was brought by a bus passenger for injuries received when the bus collided with another vehicle. At the outset, the court stated: "Metropolitan Dade County's immunity from tort liability was established by the Supreme Court of Florida in Kaulakis v. Boyd * * * ". Butts at 594. The court then went on to hold that the plaintiff, as a paying passenger on a common carrier, had the right to sue in contract for the breach of the contract of carriage, and that her action could be brought on that basis. The instant case sounds in tort.
In Department of Natural Resources v. Circuit Court of Twelfth Judicial Circuit, supra, a case with similar facts to the case at bar, the District Court stated that under the doctrine of sovereign immunity it makes no difference whether the negligent act is committed in the performance of a governmental or proprietary function; both functions are immune. The Supreme Court of Florida agreed. Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, 339 So.2d 1113 (Fla. 1976). In discussing the difference between municipalities and the sovereignty of the State, the court stated:
* * * * * *
"* * * Cases such as Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), this Court's landmark decision modifying the sovereign immunity of municipalities, are distinguishable precisely because they involve municipal corporations, not the state or its agencies. The governmental/proprietary distinction, which has on occasion been viewed as a test for waiver of sovereign immunity, has almost invariably been crucial only in the cases involving municipalities. See Seligman & Beals, The Sovereignty of Florida Municipalities, 50 Fla.B.J. 338 (1976), for the view that existing precedent has led to some confusion over the viability of the distinction in the municipal *78 area. We are not called upon today to reconcile whatever conflict in precedent may exist in that area of the law. Seligman and Beals further state, `While the State of Florida has always enjoyed sovereign immunity with respect of the torts of state employees, municipalities have not enjoyed full derivative immunity,' and appellant has been unable to direct our attention to a single case which undermines the accuracy of that statement." [emphasis added]
* * * * * *
The appellant seeks to rely on Butts v. Dade County, supra, asserting that in Butts the court found liability for a proprietary endeavor. While the Supreme Court noted that Butts involved a County and not a State agency, it did state:
* * * * * *
"* * * Without expressly overruling the Butts decision, we question the wisdom of its apparent extension of the Hargrove rationale to the county level. Unlike a municipality, a county has no corporate fund or other proprietary holding. It has long been held that counties act as arms of the state. Thus a persuasive argument, and one which this Court has accepted previously, could be made for including counties in the Constitution's protection of the state from legal liability. See Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372 (1916). Whether such an argument would be accepted by this Court today is a matter we need not yet decide. In any event, we do not find Butts, based as it seems to be on dicta from the Suwannee County decision, to be persuasive authority for appellant's point of view." [emphasis added]
* * * * * *
The Supreme Court has left open the question of whether the rationale of Keggin, supra, would be accepted today. However, as the Supreme Court has not yet overruled Keggin, it is the duty of the court to follow the prior decisions of the Supreme Court. Reaves v. L.W. Rozzo, Inc., 286 So.2d 221 (Fla.4th DCA 1973).
In Jackson v. Palm Beach County, 360 So.2d 1 (Fla.4th DCA 1978), opinion filed April 10, 1978, the Fourth District Court of Appeal, when confronted with a similar fact situation and a similar argument of liability based upon a proprietary rather than a governmental function, adhered to the holdings in Keggin v. Hillsborough County, supra, and Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, supra, and held the County had absolute immunity even though it was engaged in the proprietary function of operating a park.
The appellant asserts that the defense of sovereign immunity is unavailable to the County because it obtained insurance. Section 455.06, Florida Statutes (1975) reads:
"Liability insurance; authority of counties, state agencies, and certain political subdivisions to purchase. 
"(1) The public officers in charge or governing bodies, as the case may be, of every county, district school board, governmental unit, department, board, or bureau of the state, including tax or other districts, political subdivisions and public and quasi-public corporations, other than incorporated cities and towns, of the several counties and the state, all hereinafter referred to as political subdivisions, which political subdivisions in the performance of their necessary functions own or lease and operate motor vehicles upon the public highways or streets of the cities and towns of the state or elsewhere, own or lease and operate watercraft or aircraft or own or lease buildings or properties or perform operations in the state or elsewhere are hereby authorized, in their discretion, to secure and provide for such respective political subdivisions, and their agents and employees while acting within the scope of their employment, insurance to cover liability for damages on account of bodily or personal injury or death resulting therefrom to any person, or to cover liability for damage to the property of any person or both, arising from or in connection with the operation of any such motor vehicles, watercraft, or *79 aircraft, from the ownership or operation of any such buildings, property, or livestock, or any other such operations, whether from accident or occurrence; and to pay the premiums therefor from any general funds appropriated or made available for the necessary and regular expense of operations of such respective political subdivisions, without the necessity of specific appropriation or specification of expense with respect thereto. Provided, that in those instances where, by general law, provision has been made for the public officer in charge or governing body of any such political subdivision to provide such insurance, this section shall not be construed to impair any such previous acts but shall be construed as cumulative thereto.
"(2) In consideration of the premium at which such insurance may be written, it shall be a part of any insurance contract providing said coverage that the insurer shall not be entitled to the benefit of the defense of governmental immunity of any such political subdivisions of the state in any suit instituted against any such political subdivision as herein provided, or in any suit brought against the insurer to enforce collection under such an insurance contract; and that the immunity of said political subdivision against any liability described in subsection (1) as to which such insurance coverage has been provided, and suit in connection therewith, are waived to the extent and only to the extent of such insurance coverage; provided, however, no attempt shall be made in the trial of any action against a political subdivision to suggest the existence of any insurance which covers the whole or in part any judgment or award which may be rendered in favor of the plaintiff, and if a verdict rendered by the jury exceeds the limit of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limit set forth in the policy."
When a statute purports to authorize a waiver, the statutory language must be clear and unequivocal; such statutes should be strictly construed. Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968). In Arnold, the county had obtained an insurance policy covering liability from malfunctioning traffic lights. The Supreme Court found the purchasing of insurance did not waive sovereign immunity where the purchase of such insurance was unauthorized. A similar issue was present in Valdez v. State Road Department, 189 So.2d 823 (Fla. 2d DCA 1966). In Valdez, a prisoner was injured by the operator of a motor vehicle owned by the State Road Department. Although the vehicle was insured, the court held that sovereign immunity applied absent specific wording in the statute authorizing suit.
As pointed out above, Dade County is immune from suit unless the insurance provisions waive such immunity. The immunity extends to both the governmental and proprietary functions of the County. See: Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, supra; Keggin v. Hillsborough County, supra; Kaulakis v. Boyd, supra. It is the appellee's position that the insurance waiver only applies to those functions which are traditionally considered governmental. The waiver does not apply when the insurance covers functions which are proprietary. A governmental function has to do with the administration of some phase of government; that is to say, dispensing or exercising some element of sovereignty. Daly v. Stokell, 63 So.2d 644 (Fla. 1953). A proprietary function is one designed to promote the comfort, convenience, safety and happiness of the citizens. It is well-settled that the operation of playgrounds and recreation areas is a proprietary function. Woodford v. City of St. Petersburg, 84 So.2d 25 (Fla. 1955); Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924 (1942). The plaintiff was in a recreation area at the time of her death.
A close examination of the two principal cases on which the plaintiff relies, reveal that they support the County's position.
In Buffkin v. Board of County Commissioners of Brevard County, 320 So.2d 876 *80 (Fla. 4th DCA 1975), a minor drowned in a drainage ditch. In citing the full text of the statute, the court italicized the words "in the performance of their necessary functions". The court noted that the drainage ditch was part of the Mosquito Control District. The maintenance of a mosquito district drainage ditch is not a function capable of being performed by the private sector of the community; it exists under the sovereignty of the County's power to protect its citizens from disease. Such a function is governmental.
In Surette v. Galiardo, 323 So.2d 53 (Fla. 4th DCA 1975), a minor was killed while waiting at a school bus stop. Again the court emphasized the words "in performance of their necessary functions". In distinguishing the Arnold case, the court stated:
* * * * * *
"In Arnold, the court found that although the insurance policy covered the negligent operation of a traffic light, the statute, sec. 455.06, did not include a traffic light in the category of property for which insurance could be purchased and liability waived. By marked contrast, in the instant case we are, for example, not concerned with the category of school board `property', but, rather, we are concerned with the category of a necessary `operation'. Moreover, there is a vast distinction between the permissive function of owning and operating traffic signals and the mandatory governmental function of operating a school bus transportation system. * * *" Surette, supra, at 57 [emphasis added]
* * * * * *
The Surette court makes the permissive proprietary versus governmental distinction clear. A governmental function is necessary; a proprietary function, such as maintaining a recreation area, is not.
A review of Section 455.06(2), Florida Statutes (1975), reveals that when insurance is purchased the defense of governmental immunity is waived. It should be noted that the Legislature did not say sovereign immunity (which encompasses governmental and proprietary immunity). Cf. Section 768.28, Florida Statutes (1974). Governmental immunity must be construed to mean immunity for governmental functions. Such a reading of the statute would be in harmony with the "necessary function" language of the statute.
In conclusion, Section 455.06, Florida Statutes (1975), authorizes the waiver of immunity for governmental functions. The maintenance of a recreation area is not a necessary or governmental function. The accident occurred at a recreation area. Therefore, the procuring of insurance for such a function does not waive sovereign immunity. The appellees also rely on Section 375.251, Florida Statutes (1975) for immunity. We find this not to be applicable to a county.
The appellant claims the County is liable as a municipality, citing Article VIII, Section 2, Constitution of the State of Florida (1968). We do not agree. Having additional powers of a municipality does not automatically give Dade County municipal responsibilities. This court has recently held, in three cases, that Dade County is not liable in tort. See and compare: Smith v. Metropolitan Dade County, 343 So.2d 653 (Fla.3d DCA 1977); Cruz v. Metropolitan Dade County, 350 So.2d 533 (Fla.3d DCA 1977); Cheney v. Dade County, 353 So.2d 623 (Fla.3d DCA 1977).
Therefore, for the reasons above stated, the trial court is affirmed for any or all of the said reasons. A trial court will be sustained if its ruling is correct on the record. Pinson v. Barlow, 209 So.2d 722 (Fla. 2d DCA 1968); First National Bank of Clearwater v. Morse, 248 So.2d 658 (Fla. 2d DCA 1971); Aetna Insurance Company v. Settembrino, 324 So.2d 113 (Fla.3d DCA 1975).
Affirmed.
HUBBART, Judge (concurring).
I concur in the court's judgment herein solely on the grounds that: (1) Dade County enjoys complete sovereign immunity for *81 its torts unless specifically waived by statute; and (2) Dade County did not waive such immunity under Section 455.06, Florida Statutes (1977), by purchasing insurance to cover liability for damages on account of personal injury or death arising out of the ownership and operation of the public park and recreational area herein because it had no authority under the above statute to purchase such insurance for such property. Accordingly, the action herein is barred by the doctrine of sovereign immunity, and the trial court was eminently correct in rendering a summary judgment in favor of Dade County.
As to the first ground, I fully agree with the court's opinion on this issue together with its authorities and reasoning. As to the second ground, the Supreme Court of Florida in Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968), has settled the issue by holding that when a county, as in the instant case, seeks to purchase insurance under Section 455.06, Florida Statutes (1977), "to cover liability for damages on account of bodily or personal injury or death resulting therefrom, to any person ... arising. . from the ownership or operation of any such buildings, property, or livestock, or any other such operations," it is confined to purchasing insurance to cover property and operations specifically enumerated in the statute [livestock] and to no other species of property or operation based on the statutory interpretation doctrine of ejusdem generis. To the extent that Surette v. Galiardo, 323 So.2d 53 (Fla.4th DCA 1975), and Buffkin v. Board of County Commissioners of Brevard County, 320 So.2d 876 (Fla.4th DCA 1975), conflict with the Arnold holding, such decisions do not represent the law of this state. As such, Dade County was unauthorized to purchase the liability insurance herein as it relates to a species of property [public park and recreational area] which is not specifically enumerated in the statute.
I cannot agree with the court, however, that the above statute authorizes Dade County to purchase liability insurance for the specific property and operations enumerated in the statute only when the county is performing a "governmental function," but not a "proprietary function." I find no such language in the statute, and we would do well not to read into the statute the governmental-proprietary function doctrine which has been so thoroughly discredited. Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957). This is particularly true when we reach the anomalous result, as in this case, that the county, in complete turnabout from the above doctrine, is immune from tort liability when performing its proprietary functions, but not its governmental functions. Waiver of sovereign immunity statutes should be strictly construed, but not in such a way as to reach an unreasonable or illogical result. See State Farm Mutual Automobile Insurance Co. v. O'Kelley, 349 So.2d 717, 719 (Fla. 1st DCA 1977); George v. State, 203 So.2d 173, 175-76 (Fla. 2d DCA 1967).
In my view, the term "necessary functions" as used in the statute should be interpreted in a common sense way to mean any lawful function of county government. Such an interpretation is a reasonable, yet strict construction of the statute. When read in pari materia with the specifically enumerated species of property and operations which can be covered by liability insurance, it is clear that only a very limited waiver of sovereign immunity has been accomplished by this statute. And contrary to the court's conclusion herein, the term "governmental immunity" as used in the statute has no special meaning apart from the term "sovereign immunity" because both such terms have long been used interchangeably in this field of law. Prosser on Torts 970-987 (4th Ed. 1971); Harper and James, The Law of Torts 1607-1632 (1956).
Finally, it should be noted that the tort incident sued upon occurred prior to the effective date of Florida's general waiver of sovereign immunity statute. Sections 768.28, 768.30, Florida Statutes (1975). Had it occurred subsequent thereto, a substantially different question would be presented.
NOTES
[1] It should be noted that the limited waiver of sovereign immunity allowed by Section 768.28, Florida Statutes (1974) is not applicable in this case, since the alleged wrongful death occurred before the effective date of the statute.