Vernon R. Bishop Director South Walton County Mosquito Control District Santa Rosa Beach
QUESTIONS:
1. Can a member of the board of commissioners of a mosquito control district organized and operating under Ch. 388, F. S., be sued individually?
2. Is it necessary for board members to be covered under liability insurance in the event of a suit or would a suit be against the body corporate?
SUMMARY:
Under the provisions of the general law waiving sovereign immunity in tort for state agencies or subdivisions, as defined in s.768.28(2), F. S., actions may be brought against a mosquito control district for the negligent acts or omissions of its officers or employees committed within the scope of their authority. The officers or employees of the district may be held individually or personally liable, however, for those acts or omissions committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Florida appellate court decisions are in conflict as to whether the officers or employees of a governmental entity are immune from suit for negligent acts or omissions committed within the scope of their authority. The resolution of this conflict is not within the jurisdiction of the Department of Legal Affairs and must await action by the Legislature.
AS TO QUESTION 1:
Section 388.02, F. S., provides for the creation of special taxing district for the control of mosquitos and other arthropods. Within the boundaries of the district, the board of commissioners of the mosquito district possesses `all the powers of a body corporate, including the power to sue and be sued as a corporation in said name in any court.' Section 388.161(2), F. S. Section 388.131, F. S., requires each commissioner to give a `surety bond in the sum of $2,000, the cost thereof being borne by the district, conditioned on the faithful performance of the duties of his office.'
An analysis of individual liability for actions taken by members of the board of commissioners of a mosquito control district must begin with a discussion of s. 768.28, F. S. With the enactment of s. 768.28, the Legislature has waived the state's immunity fromtort liability provided therein for itself `and for its agencies or subdivisions' subject to the monetary limitations set forth in s. 768.28(5), F. S. ($50,000 on any claim or judgment by one person or $100,000 for all claims arising out of the same incident or occurrence). The phrase `state agencies or subdivisions' is defined by s. 768.28(2), F. S., to include
 . . . the executive departments, the legislature, the judicial branch, and the independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties or municipalities.
See also s. 1.01(9), F. S., which defines the term `political subdivision,' where the context of the Florida Statutes will allow, to include `counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts and all other districts in this state.' (Emphasis supplied.)
It seems clear that a mosquito control district, established as a special taxing district governed by a board of commissioners with all powers of a body corporate, including the power to be sued as a corporation, is within the definitional purview of s. 738.28(2), F. S. See Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 82 So. 346, 350 (Fla. 1919), in which the Florida Supreme Court noted that the Everglades Drainage District, a special taxing district created with `all the powers of a body corporate' (Ch. 6456, 1913, Laws of Florida), was a public quasi-corporation and, as such, `a governmental agency of the state for certain definite purposes, having such authority only as is delegated to it by law.' Accordingly, in AGO 078-113, I determined that the East Beach Water Control District, a special taxing district deemed in its enabling legislation to be `a public corporation of this state' (see s. 2 of Ch. 75-469, Laws of Florida), was within the purview of s. 768.28(2); and that the monetary limitations on tort liability set forth in s. 768.28(5), F. S., were, therefore, applicable to the district. Cf. AGO 078-33 (municipal housing authority within definitional purview of s.768.28[2]); AGO 078-42 (hospital district within definitional purview of s. 768.28[2]).
Having determined that a mosquito control district is a `state agency or subdivision' within the scope of s. 768.28, F. S., it is now necessary to discuss that statute's impact upon the tort liability of individual members of the district board of commissioners. Section 768.28 provides that an action at law may be brought against the state or its agencies or subdivisions subject to the limitations specified in the act to recover damages in tort against the state or its agencies or subdivisions for injuries caused by the negligent actions or omissions of anyemployee of the agency or subdivision while acting within the scope of his office or employment `under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant in accordance with the general laws of the state.'
It is clear that the members of the district board of commissioners are officers of the district rather than employees. Thus, the provisions of the second sentence of s. 768.28(1), F. S., regarding actions brought against the district for acts of its employees are not, on the face of the statute, applicable to acts of the district's officers. However, like other local governmental units, a mosquito control district can operate only through its officers; through them the district performs its functions. Cf. 20 C.J.S. Counties s. 100(a); Owen v. Baggett, 81 So. 888, 889 (Fla. 1919) (county performs its administrative functions through its officers); Turk v. Richard, 47 So.2d 543, 544 (Fla. 1950) (the governing body of a municipality is chosen by the electors to act for the municipality). Generally, in the absence of statute, a special taxing district such as a mosquito control district would not be liable for torts committed by it in the exercise of its governmental functions. See Rabin v. Lake Worth Drainage District,82 So.2d 353 (Fla. 1955) (drainage district not responsible in tort actions, in the absence of legislative authority); Seaboard Air Line R. Co. v. Sarasota-Fruitville Drainage District,255 F.2d 622 (5th Cir.), cert. denied, 358 U.S. 836 (1958) (Florida law provides that drainage districts are immune from tort liability); Buffkin v. Board of County Commissioners of Brevard County,320 So.2d 876 (4 D.C.A. Fla., 1975), cert. denied, 338 So.2d 841 (Fla. 1976) (pursuant to s. 455.06, F. S., mosquito control district waived sovereign immunity to extent of coverage secured by liability insurance purchased by district to cover liability in connection with its ownership or operation of property); Surette v. Galiardo, 323 So.2d 53, 55 (4 D.C.A. Fla., 1975) (under s. 455.06, F. S., district school board waived sovereign immunity to the extent of coverage secured and provided for under that statute although questions involving waiver of tort immunity no longer governed by s. 455.06 due to passage of s. 768.28, F. S.). Thus, in the absence of statute, the district would not be liable for the torts of its officers and employees; the cloak of sovereign immunity would extent to them. 81A C.J.S. States s. 198; and see
Loucks v. Adair, 312 So.2d 531, 535 (1 D.C.A. Fla., 1975). Accordingly, inasmuch as the Legislature has waived the district's immunity for torts as limited by and to the extent provided in s.768.28(5), F. S., the waiver of immunity specified in s.768.28(1), F. S., in tort for the district would appear, until and unless otherwise determined by the courts, to include a waiver of the district's immunity for the negligent acts or omissions of the district's officers through whom the district acts, when the district is itself sued or joined as a party defendant in an action against its officers, agents, or employees. Parenthetically, under s. 111.07, F. S.,
 Any agency of the state or political subdivision of the state is authorized to defend any actions in tort brought against any of its officers or employees as a result of any alleged negligence of its officers or employees arising out of and in the scope of their employment with the state or its subdivisions, unless such officer or employee acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
Section 768.28(9), F. S., is also relevant with respect to individual liability in tort resulting from acts or omissions of officers. That subsection reads:
 No officer, employee, or agent of the state or its subdivisions shall be held personally liable in tort for any injuries or damages suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Subject to the monetary limitations set forth in subsection (5), the state shall pay any monetary judgment which is rendered in a civil action personally against an officer, employee, or agent of the state which arises as a result of any act, event, or omission of action within the scope of his employment of function. (Emphasis supplied.)
 Florida appellate court decisions which have interpreted s. 768.28(9) are not in accord as to the meaning of this subsection. In Metropolitan Dade County v. Kelly, 348 So.2d 49, 50 (1 D.C.A. Fla., 1977), the First District Court of Appeal considered the question of whether a county employee could be held personally liable under s. 768.28(9) for negligent acts committed within the scope of his employment. The court ruled that, in the absence of an allegation that the employee acted in bad faith, the trial court should have granted the employee's motion to dismiss. See also Pennington v. Serig, 353 So.2d 107 (3 D.C.A. Fla., 1977), in which the court, in affirming a summary judgment entered in favor of two district school board employees, held that, in the absence of any allegations or proof of bad faith or malicious purpose on their part, a district school board safety inspector and his supervisor were immune from personal liability under s. 768.28(9), F. S.
 However, in Talmadge v. District School Board of Lake County, 355 So.2d 502 (2 D.C.A. Fla., 1978), the court reviewed s. 768.28(9) from a different perspective. The Talmadge court reversed an order of the lower court which had dismissed a school district employee as a defendant from a suit filed against the employee and the school board for injuries sustained by a student as a result of the employee's negligence. In reaching its conclusion, the court reasoned as follows on page 503:
 Section 768.28(9), Florida Statutes (1975), does not clearly provide that no cause of action may be sustained against an employee of the Board, nor does it clearly provide that an individual employee is immune from suit as a result of injuries sustained due to his negligence. While it does state, `No . . . employee, or agent of the state . . . shall be held personally liable in tort . . .,' the statute goes on to indemnify such an employee for a monetary judgment rendered against him personally with the following language:
 `. . . [T]he state shall pay any monetary judgment which is rendered in a civil action personally against an . . . employee . . . which arises as a result of any act . . . within the scope of his employment.'
 We hold that this statute acts only to indemnify an employee of the state for a monetary judgment entered against him as a result of negligent acts occurring within the scope of his employment, but does not operate as a bar against suing such an employee as a party defendant. Had the legislature intended that individual employees be immune from suit, they would have clearly so stated.
Implicit in the Talmadge court's analysis of s. 768.28(9) is the finding that the statute for its explicated purposes requires state agencies and subdivisions as well as the state to indemnify their officers or employees for negligent acts committed in the scope of their office or employment. (The Talmadge case involved an employee of a school district, not an employee of the state.) It should be noted, however, that s. 768.28(9) expressly obligates only the state to pay such monetary judgments rendered against an officer or employee of the state. It is unclear from the express language of the statute whether local governments are also embraced within the terms of that enactment. Cf. s. 111.06, F. S., which authorizes, but does not require, the county to indemnify a sheriff or deputy sheriff for any judgment rendered in any such civil suit against the sheriff or deputy sheriff; and s. 111.08, F. S., authorizing the Department of Health and Rehabilitative Services to expend from its General Revenue Fund sums sufficient to compensate an officer, employee, or agent who has been held personally liable for the payment of a judgment rendered in a civil action arising out of his employment. In light of the lack of uniformity which is reflected in the court decisions interpreting s. 768.28(9), it is evident that the Legislature must clarify the meaning of that subsection as well as other statutes (such as ss. 111.06 and 111.08, F. S.) on the subject of individual tort liability or the immunity from suit of officers of governmental entities.
In sum, therefore, I am compelled to advise that Florida law governing the personal liability in tort or immunity from suit of individual officers of a special taxing district is currently somewhat unsettled. Under s. 768.28(1), F. S., it would appear that the mosquito district, as a corporate entity, is subject to suit in tort for the acts of its officers (or employees) committed within the scope of their authority. In addition, under s.768.28(9), F. S., it is clear that an officer (or employee) of the district may be held personally liable for those acts or omissions committed in bad faith or with malicious purpose or in wanton and willful disregard of human rights, safety, or property. As to those acts or omissions committed by officers (or employees) which are merely negligent, however, recent court decisions fail to reflect a consensus with respect to the individual or personal liability of an officer (or employee) or his immunity from suit where the commission of the prescribed negligent acts or omissions occurs within the scope of his office or function or employment. The resolution of this conflict is not within the jurisdiction of this office, and must await action by the Legislature.
This opinion has been confined to a discussion of individual or personal civil liability of commissioners of a mosquito control district (a public quasi-corporation statutorily empowered to sue and be sued as a corporation) under Florida law and no attempt has been made to discuss the parameters of liability under the Federal Civil Rights Act, 42 U.S.C. § 1981, et seq. Briefly, however, it might be noted that a state or local officer may be held personally liable under s. 1983 if such officer either acted without authority or, if such officer acted within his authority, he acted in bad faith. E.g., Mark v. Groff, 521 F.2d 1376,1379-1380 (9th Cir. 1975) (qualified governmental immunity for acts done in the course of official conduct bars suit against state officers under s. 1983 only if, inter alia, such officers acted in good faith); Waits v. McGowan, 516 F.2d 203, 206 (3rd Cir. 1975) (a state officer's acts done in abuse of his or her authority are actionable under the Federal Civil Rights Act).
AS TO QUESTION 2:
A threshold issue which is implicit in your second question is whether the mosquito control district is authorized to provide its officers with individual liability insurance. It is a basic and fundamental principle that public funds may be spent only for a public purpose or a function which the public body or officer is expressly authorized by law to carry out, or which must be necessarily implied in order to carry out the purpose or function expressly authorized. See 81 C.J.S. States s. 167; 20 C.J.S.Counties ss. 129 and 207; Davis v. Keen, 192 So. 200 (Fla. 1939); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952); O'Neill v. Burns, 198 So.2d 1 (Fla. 1967); Florida Development Comm. v. Dickinson, 229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied,237 So.2d 530 (Fla. 1970); AGO's 071-28, 068-12. See also State exrel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628,636 (1 D.C.A. Fla., 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974); Hopkins v. Special Road and Bridge Dist. No. 4, 74 So. 310
(Fla. 1917). Cf. AGO 078-97, in which this office concluded that a county officer was not authorized by law to expend or seek reimbursement from the funds of his office to defray legal fees incurred in defending himself against a complaint filed with the Ethics Commission.
With regard to the purchase of liability insurance, s. 768.10, F. S., provides that `[l]aws allowing the state or its agencies orsubdivisions to buy insurance are still in force and effect andare not restricted in any way by the terms of this act' (Emphasis supplied.) See also s. 768.13, F. S., which `authorizes' the state and its `agencies and subdivisions' to self-insure, to enter into risk management programs, and to purchase liability insurance, `for whatever coverage they may choose,' or to provide for any combination of the above, `in anticipation of any claim, judgment or claims bill which they may be liable to pay pursuant to' s.768.28, F. S. But see Surette v. Galiardo, supra, at n. 5, p. 57, in which the court cautioned that the language of an insurancepolicy and of a statute waiving tort liability may not necessarily be the same; the language of the statute may clearly embrace the subject matter for which insurance is desired but the language of the policy may not embrace that particular risk or may even exclude certain aspects thereof.
Further, s. 455.06(1), F. S., provides general statutory authorization for the purchase of insurance by governmental agencies. This subsection states:
 The public officers in charge or governing bodies . . . of every . . . governmental unit, department, board, or bureau of the state, including tax or other districts, political subdivisions, and public and quasi-public corporations . . . of the several counties and the state, all hereinafter referred to as political subdivisions, which political subdivisions in the performance of their necessary functions . . . perform operations in the state or elsewhere are hereby authorized, in their discretion, to secure and provide for such respective political subdivisions, and their agents and employees while acting within the scope of their employment, insurance to cover liability for damages on account of bodily or personal injury or death resulting therefrom to any person, or to cover liability for damage to the property of any person or both, arising from or in connection with . . . any . . . such operations, whether from accident or occurrence, and to pay the premiums therefor from any general funds appropriated or made available for the necessary and regular expense of operations of such respective political subdivisions . . . . (Emphasis supplied.)
It is clear from a reading of s. 455.06, supra, together with ss.768.10 and 768.28(13), F. S., that the governing body of a mosquito control district is authorized to purchase insurance to cover potential tort liability for itself and for its officers, agents, and employees in connection with its authorized functions and operations. And, as has been seen in the discussion in question 1, pending judicial clarification to the contrary, under s. 768.28(1), F. S., the district may be sued in tort for the negligent acts and omissions of its officers (or employees) committed within the scope of their office (or employment) or function. Thus, it is clear that it would not ordinarily be necessary for commission board members to purchase individual or personal liability insurance under such circumstances, since s.768.28(1), F. S., authorizes actions in tort against the district
for the negligent actions taken by its officers within the scope of their office, and the district can operate only through its governing officers.
As to those actions or omissions committed by an officer which are outside the scope of his office or which are otherwise committed `in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property,' there is no provision in s. 768.28 or elsewhere in the statutes which imposes liability upon the district for such actions. Such actions remain the personal responsibility of the officer who committed them. The board of commissioners of the district may exercise only those powers specifically or by necessary implication authorized or granted by statute; moreover, if there is any doubt as to the lawful existence of a particular power that is being exercised, the further exercise of the power should be arrested. See State ex rel. Greenberg v. Florida State Board of Dentistry, supra; Gessner v. Del-Air Corporation,17 So.2d 522 (Fla. 1944); White v. Crandon, 156 So. 303 (Fla. 1934). There is no statute which authorizes the governing board of the district to purchase liability insurance for or to protect its officers against individual or personal liability; hence, the district is not authorized by law to do so.
Prepared by: Patricia R. Gleason, Assistant Attorney General